## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FMC Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-00487 |
| | ) | |
| v. | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| Syngenta Crop Protection AG, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, FMC Corporation ("FMC"), by and through its undersigned counsel, for its

Complaint against Defendant, Syngenta Crop Protection AG ("Syngenta"), alleges and states as

follows:

## INTRODUCTION

1.      This is a case about a theft of intellectual property.  During a collaboration

between FMC and Syngenta, scientists from the companies invented a class of new compounds

for use in herbicidal products.  Because those new compounds were based on FMC's proprietary

information and derivative of a compound wholly invented by FMC, FMC retained ownership

rights to those new compounds.  Syngenta, however, took FMC's invention and patented it for

itself—not only disclosing FMC's confidential and proprietary trade secrets to the world, but

also seeking and obtaining U.S. patents that should have named FMC's scientists as inventors.

In this action, FMC seeks to right these wrongs.  This is an action for correction of inventorship,

misappropriation of trade secrets, and breach of the confidentiality provisions of a collaboration

agreement between the parties.

2.      FMC's predecessor, E.I. du Pont de Nemours, Inc. ("DuPont"), pioneered a new family of herbicides, code-named the "SGF45" family, in the 2010s.  In 2015, DuPont and Syngenta decided to collaborate to make and test new herbicide molecules in DuPont's SGF45 family, among other things.  The parties agreed to share the risks and costs of discovering new herbicides and pooled their resources.  DuPont (later FMC) also brought to the collaboration its years of know-how, library of compounds and data, and expertise in synthesizing those compounds.  The collaboration continued after FMC acquired DuPont's crop protection business in 2017.

3.      During the collaboration, FMC and Syngenta scientists met regularly to share ideas and discuss their work.  At one such meeting, FMC scientists had an idea for how to make new and improved herbicides within the SGF45 family: to include in those molecules a chemical structure known as a pyrazole with certain other substituent chemical groups attached.  The idea was a success.  After the meeting, and pursuant to the collaboration, Syngenta made pyrazole compounds in the SGF45 family that proved to have promising activity as herbicides.  Under the terms of the collaboration, because the new pyrazole compounds were based on DuPont's intellectual property, FMC owned the rights to them and had the responsibility to file a patent application on them.  FMC did so, filing a patent application naming both its own scientists and Syngenta's as inventors.

4.      In secret, however, Syngenta had beaten FMC to the Patent Office.  On February 5, 2019, Syngenta filed an application with the U.K. patent office—disclosing the new compounds along with ways of making compounds in the SGF45 family developed at DuPont.  Based on that filing, Syngenta filed U.S. applications and has obtained (or received allowance notifications for) five U.S. patents, with another pending, claiming related processes and

2

chemical compounds that incorporate FMC's invention. Not one of them names the FMC's employees who clearly participated in the discovery as inventors; rather, Syngenta has named only its own employees as inventors and has asserted itself as the sole owner of each patent.

5.      For the reasons described further below, FMC's scientists should be named as co-inventors of all of these applications and patents. Moreover, FMC seeks relief barring Syngenta from using and profiting from its illicit theft and disclosure of FMC intellectual property, including (i) an order correcting the inventorship of Syngenta's patents and applications regarding the pyrazole herbicides to reflect the contributions of FMC's scientists; (ii) an order requiring Syngenta to assign to FMC its rights to its patents and applications related to this information; (iii) an injunction prohibiting Syngenta from any further use of this information, and/or (iv) an award of damages to FMC.

## PARTIES

6.      FMC is incorporated under the laws of the State of Delaware and has a principal place of business at 2929 Walnut Street, Philadelphia, Pennsylvania 19104. FMC is a U.S. publicly-owned U.S. corporation with operations located around the world, including a manufacturing facility in Middleport, NY.

7.      Syngenta Crop Protection AG is a corporation organized and existing under the laws of Switzerland, with its principal place of business at Schwarzwaldallee 215, CH-4058 Basel, Switzerland. Syngenta is a wholly owned subsidiary of Syngenta Group, which is wholly owned by China National Chemical Corp.—an entity funded and overseen by the Government of the People's Republic of China.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a) because FMC raises claims under the Defend Trade Secrets Act of

2016, 18 U.S.C. § 1836, and 35 U.S.C. § 256.

9.      In addition, this Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1332 because Syngenta is a citizen of a foreign state (Switzerland), and

FMC is a citizen of Delaware and Pennsylvania, and FMC seeks greater than $75,000 in

damages.  28 U.S.C. § 1332(a)(2).

10.     The Court also has supplemental jurisdiction over FMC's state law claims under

28 U.S.C. § 1367.

11.     This Court has personal jurisdiction because Syngenta consented to this Court's

personal jurisdiction in the Collaboration Agreement.  Collaboration Agreement for Herbicide

Compounds of June 1, 2015, as amended ("Collaboration Agreement" or "CA"), ¶ 9.6 ("[T]he

State and Federal courts in the State of New York shall have exclusive jurisdiction over any

proceeding seeking to enforce any provision of, or based upon any right arising out of, th[e]

Agreement or the transactions contemplated hereunder.").

12.     Venue is proper under 28 U.S.C. § 1391(c)(3) because Syngenta is not a resident

in the United States.

## FACTUAL BACKGROUND

13.     Herbicides are chemical products that control unchecked weed growth in

agricultural cropping systems.  Weeds are undesirable to crop producers; they reduce crop yields

through competition for resources such as sunlight, water, nutrients, and space.  Effective

herbicides kill certain target weeds while leaving the desired crop relatively unharmed.

4

Accordingly, successful weed management requires identifying relevant species of crops and weeds and understanding their biological characteristics so that the herbicide can be tailored to the weeds present in individual crop fields.  Unchecked weed growth can cause significant reduction in productivity and thereby result in increased costs to the consumer.

14.     FMC is an innovation-based agrochemical company focused on crop protection, which includes biologicals, herbicides, insecticides, and fungicides.  It has been making agricultural chemicals for over a century and is a leader in researching, developing, distributing and selling crop protection products.

15.     Syngenta is a competitor of FMC in the crop protection business.

16.     DuPont is also in the crop protection business.  On November 1, 2017, FMC acquired a significant portion of DuPont's crop protection business, including the DuPont herbicide discovery assets and associated intellectual property at issue here.

**A.     DuPont's Invention of the SGF45 Lead Area.**

17.     In the 2010s, scientists at DuPont developed a new lead area of herbicides, known as SGF45, that utilized an entirely new mode of action for controlling weeds by inhibiting the enzyme dihydroorotate dehydrogenase ("DHOD").  SGF45 was the original lead molecule within this new class of herbicides, which then went on to become the name for the entire "SGF45 lead area."  These herbicides share a common overall chemical structure, centered around a pyrrolidinone core, but with a variety of substituents.

18.     One of the molecules in this area was TVE29, which DuPont synthesized and tested extensively as a candidate herbicide for rice in early toxicological studies and in field testing.  DuPont also developed methods of synthesizing this chemical compound.

5

19.     On December 3, 2013, DuPont filed Provisional Application No. 61/911,324 ("the '324 application") seeking patent rights for a genus of compounds in the SGF45 area, including TVE29.  On May 21, 2019, the United States Patent and Trademark Office issued United States Patent No. 10,294,202 ("the '202 patent") to FMC (which by this point had acquired the relevant DuPont business unit and had been assigned the application), claiming priority to the '324 application.

20.     The '202 patent discloses and claims certain pyrrolidonones, their N-oxides, and salts for controlling undesirable vegetation, including TVE29 and other chemical analogs in the SGF45 lead area.  It also discloses a process for synthesizing SGF45 lead area compounds ("the linear route").

21.     Syngenta did not contribute in any way to the discovery of the SFG45 lead area, to the discovery of any other compound specifically disclosed in the '324 application, or to any of the other inventions disclosed in the '324 application.  Syngenta also did not contribute in any way to the development of the linear route for synthesizing TVE29 or related compounds in the SGF45 area.

**B.      The Collaboration Agreement**

22.     Following DuPont's initial discovery of the SGF45 lead area, it began looking for ways to develop and commercialize its new discovery.  DuPont saw an opportunity to develop the field through a collaboration with Syngenta to conduct research to discover additional useful herbicides.

23.     Accordingly, on June 10, 2015, DuPont and Syngenta entered into a Collaboration Agreement for Herbicide Compounds (the "Collaboration Agreement").

24.     The purpose of the Collaboration Agreement was to "increase the potential effectiveness of their evaluation and pre-development activities, and enable [Syngenta and DuPont] to more quickly and efficiently research and develop new Candidate Herbicides, share or lower the risk associated with, investments in such evaluation and pre-development, and potentially bring more herbicide products to the market."  CA, p. 1.

25.     As to the SGF45 family that DuPont brought to the collaboration, the parties agreed to work on two projects.

    a.   First, the parties agreed to work on limited aspects of DuPont's TVE29 compound that DuPont had developed prior to the Collaboration Agreement that was effective in rice.  This project was known as "Project Sake."

    b.   Second, the parties sought to conduct additional research into the SGF45 lead area to discover analogs to TVE29 that would be useful in other markets, such as corn or soybean markets.  This project, known as "Project Gnome," was identified in Schedule A to the Collaboration Agreement.

26.     On November 1, 2017, when FMC purchased DuPont's crop protection portfolio, it became DuPont's successor to the Collaboration Agreement.

**1.     FMC Retained Intellectual Property Rights to All SGF45-Related Information.**

27.     Under the Collaboration Agreement, FMC retained the intellectual property rights to SGF45-related information.

28.     The Agreement broadly defines the "Technical Information" disclosed by the Parties to each other under the Agreement as all "know-how, trade secrets, conceptions, ideas, innovations, discoveries, inventions, processes, materials, structures, enzymes, proteins, genes, machines, formulae, equipment, enhancements, modifications, data, samples, documentation,

7

methods, techniques, systems, designs, production systems and plans, programs and information, experience and other proprietary knowledge, whether or not patentable, copyrightable, or susceptible to any other form of legal protection, and other information that is disclosed to one Party by the other Party pursuant to th[e] Agreement."  CA, 1.1(nn).

29.     The Agreement then divides this Technical Information into two categories: Background IP and Project IP.

30.     First, "Background IP" is defined to include the parties' intellectual property developed prior to the initiation of each project performed collaboratively under the Collaboration Agreement.  It includes "any Technical Information (including samples) which is provided by one Party to another Party under th[e] Agreement which constitutes: Technical Information (including samples) conceived and reduced to practice as of a Project Initiation Date in Carrying out a Project."  CA, 1.1(d).  For Project Gnome, the Project Initiation Date was defined by the Collaboration Agreement to be June 10, 2015.  CA, Schedule A.

31.     Each party retained "sole and exclusive ownership of all right, title and interest in, or such other rights as it has to its Background IP."  CA, 4.1.  Thus, DuPont retained control of its intellectual property related to TVE29 and the other SGF45-area herbicide compounds that had been conceived of and reduced to practice at the outset of Project Gnome.

32.     Second, "Project IP" is information created as part of the collaboration.  "Project IP" is defined as "any Technical Information (including samples) (i) conceived or reduced to practice on work pertaining to a Project after the Project Initiation Date of the Project or (ii) otherwise pertaining to a Candidate Herbicide Lead Area conceived or reduced to practice after the respective Project Initiation Date for the Candidate Herbicide Lead Area."  CA, 1.1(ff).

33.     Because DuPont exclusively conceived of the SGF45 lead area and TVE29 and provided that information to Syngenta as part of the Agreement, it retained the ownership rights to any intellectual property related to the SGF45 lead area compounds, including TVE29 analogs, created under Project Gnome during the term of the Agreement.  Section 4.2(a) states: "For a Single Contributor Lead Area Project, the Candidate Herbicide Party shall own all Project IP directed to the respective Candidate Herbicide Lead Area."  CA, 4.2(a).

34.     Thus, DuPont retained the intellectual property rights to all work in the SGF45 area, including any SGF45- or TVE29-related herbicide compounds discovered during the collaboration and the processes used to synthesize those compounds.

35.     When FMC acquired DuPont's crop protection portfolio, DuPont assigned to FMC all of DuPont's intellectual property rights under the Agreement.  Thus, FMC now owns the intellectual property rights in the Agreement, including all Project IP.

           **2.     The Collaboration Agreement Prohibits the Disclosure of Confidential Information.**

36.     The Collaboration Agreement defines "Confidential Information" as "any and all (a) data, know-how, formulas, documents, specifications, reports, studies, findings, material safety data sheets, inventions and ideas, which is either (i) developed as a result of a Project (including Project IP) or (ii) disclosed by one party to another party under th[e] Agreement (including Background IP)."  CA, 1.1(k).

37.     It provides that the parties will not use "Confidential Information for any purpose other than the Purpose," CA, 3.2(a), which is "to evaluate and further optimize herbicides selected for collaboration projects under th[e] Agreement with the goal of advancing herbicides within Candidate Herbicide Lead Areas to the point where the Parties can evaluate their suitability for commercialization."  CA, 1.1(hh).  It further provides that the parties will not

disclose "any information or material embodying or made by use of any such Confidential Information," CA, 3.2(b), and will not "publish any Confidential Information unless approved in writing in accordance with the provisions of th[e] Agreement," CA, 3.2(c).  Each party agreed to "[i]nform its personnel of its confidentiality obligations under th[e] Agreement."  CA, 3.2(e).

     **C.**     **FMC and Syngenta's Invention of VJP79.**

38.     As part of Project Gnome, FMC and Syngenta sought to discover and develop other herbicide compounds structurally related to TVE29 that targeted broadleaf weeds, specifically in corn and soybean crops.  TVE29 itself had not been shown to be effective against such broadleaf species.

39.     As a result, the Parties initiated the early stage evaluation and pre-development of TVE29 and its analogs, including by conducting in-house studies and hiring contract research organizations ("CROs") to conduct studies with the goal of advancing analogs to the point where the parties could evaluate their suitability for commercialization.

40.     As part of the collaboration between the parties, FMC and Syngenta had monthly teleconferences and bi-annual face-to-face meetings to discuss the development of a pipeline of herbicidal compounds and the creation of new target compounds.

41.     One of the new target compounds developed in this process was VJP79, an analog of TVE29 within the SGF45 lead area.

42.     TVE29 and VJP79 differ in that VJP79 is a *pyrazole*-substituted compound. TVE29 contains two substituted phenyl groups (i.e., six-membered carbon rings, with substituents, red) and no pyrazole group attached to the pyrrolidinone core (gray) that was a focus of FMC's and DuPont's work in the area:

**TVE29**

43.    VJP79, by contrast, contains one substituted pyrazole group (blue) and one substituted phenyl group (red) attached to that same core (gray):



**VJP79**

44.    The genesis of VJP79 was the March 6-8, 2018 confidential face-to-face meeting between FMC and Syngenta scientists at Syngenta's research facility in Jealott's Hill (located in the United Kingdom).

45.    Travis McMahon, Ph.D., lead scientist of the FMC team, and James Morris, Ph.D., lead scientist of the Syngenta team, presented a confidential joint chemistry update for Project Gnome on March 6.

46.    The presentation discussed various compounds that had recently been synthesized for screening, as well as previous compounds that each party had made.

11

47.     Syngenta had access to FMC's compound library, which would have included previously-developed SGF45 lead area analogs, including FMC's experimentation prior to the collaboration with pyrazole-substituted compounds.

48.     The next day, on March 7, 2018, three FMC scientists—Dr. McMahon, Matthew Campbell, Ph.D., and Thomas Stevenson, Ph.D.—and Dr. Morris from Syngenta ("FMC-Syngenta Team") brainstormed other compounds to synthesize and test.

49.     During this discussion, the FMC-Syngenta team discussed adding a $CF_3$ (trifluoromethyl) group to the pyrazole in a pyrazole-substituted compound, hypothesizing that it would have improved activity relative to prior experiments with pyrazoles.  Dr. McMahon hand-drew a C-linked pyrazole-substituted structure with a $CF_3$ group.



50.     On March 8, 2018, the final day of the meetings, the FMC-Syngenta Team continued these discussions in a breakout session.  In this session, the Team created a PowerPoint presentation depicting several ring subsituents that might be incorporated into a pyrrolidinone-core herbicide, including the substituted pyrazole ring which can be found in VJP79.

51.     Thus, the creation of VJP79 was the result of the collaborative relationship between FMC and Syngenta, as contemplated by the Collaboration Agreement.  And the initial conception of VJP79 and related pyrazole herbicides was made by FMC scientists, or in the alternative, by FMC and Syngenta scientists during a collaborative discussion.

**D.     The Parties' Joint Efforts to Develop VJP79 for Field Testing.**

52.     From March 2018 until January 2019, FMC and Syngenta continued monthly updates via teleconference concerning several target compounds, including VJP79 and other derivatives.

53.     The joint goal was to produce a target compound for field-testing by May 2019.

54.     On March 20, 2018, Dr. McMahon sent Dr. Morris an email asking whether Dr. Morris intended to make the pyrazoles discussed in the meeting—in other words, VJP79 and its associated pyrazole herbicides.  Dr. Morris responded by stating that Syngenta had tried and failed to make these compounds in an initial attempt.

55.     However, Dr. Morris stated that Syngenta would run the C-linked pyrazole-substituted compounds, based in part on the structure Dr. McMahon drew during the March 7, 2018 meeting and which would have included VJP79, through the linear route that DuPont had created prior to the Collaboration Agreement.

56.     Syngenta had difficulties synthesizing the VJP79 compound using the linear route.

57.     Syngenta then developed a new route, the thiolactam route ("Scheme (I)"), in order to solve its internal issues of synthesizing the VJP79 compound.

**Synthesis scheme (I)**



58.     In order to make the field-testing deadline in May 2019, FMC worked to synthesize its own batches of VJP79 for field-testing in the United States.

59.     On or around January 2019, Syngenta was finally able to synthesize the VJP79 compound for field-testing in Europe and presented the route "Scheme (II)," in the January monthly teleconference between the parties.  Scheme (II) embodies the FMC/DuPont "linear route," but using the pyrazole group that is present in VJP79 instead of the phenyl group that is

attached to the pyrrolidinone in the analogous location in TVE29:

**Synthesis Scheme (II)**



60.   FMC scientists, including Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson, contributed to the conception of the Scheme (I) and Scheme (II) synthetic routes and the pyrazole intermediates they use.  Each of these processes and intermediates includes the inventive idea that emerged from the FMC scientists and their collaborative discussions with Syngenta to use particular substituted pyrazoles in pyrrolidinone herbicides of the SGF45 lead area, and in particular the structure Dr. McMahon drew in his notebook.

**E.    FMC's Patent Application.**

61.   On May 24, 2019, FMC filed U.S. Provisional Patent Application No. 62/852,971, which served as the priority patent application for international patent application WO 2020/242946 ("the '946 application"), entitled "Pyrazole-Substitute Pyrrolidinones as Herbicides."

62.   The '946 application discloses a genus structure that encompasses VJP79 and its pyrazole analogs:

15

63.     Because VJP79 was a joint invention, the '946 application names both FMC and Syngenta scientists, including the FMC-Syngenta Team.

**F.      Termination of the Collaboration Agreement.**

64.     By early 2019, after a year of negotiations, FMC and Syngenta were unable to agree on development and commercialization of TVE29 as a rice herbicide under Project Sake.

65.     At that time, the Parties' efforts to develop further products including VJP79 under Project Gnome were still underway.  The failure to reach agreement to develop and commercialize TVE29 led the parties to view continued collaboration on Project Gnome as untenable, and the Collaboration Agreement expired by its own terms on May 31, 2019.

66.     Prior to the final expiration of the Collaboration Agreement, FMC requested an orderly wind-down of both Project Gnome and Project Sake, including the return of FMC's technical data and cooperation in preparing what became FMC's '946 application.

67.     Syngenta ignored FMC's requests and instead sought to delay, obstruct, and frustrate FMC from pursuing further development and/or commercialization of its TVE29-related products, which has continued to this day.

16

G.   **Syngenta's Theft of VJP79.**

1.   **Syngenta's British Priority Application.**

68.   Throughout the course of the collaboration, Syngenta cooperated constructively with FMC on a number of patent application filings arising out of the collaboration.  From February 2019 onwards, however, Syngenta's conduct changed, and it refused to assist FMC with preparing and filing what became the '946 application that claims the pyrazole analogs and names both FMC and Syngenta scientists as inventors.  For several months, FMC attempted to set up meetings to determine the scope of the claims and to complete the application, but Syngenta repeatedly canceled or postponed meetings.

69.   The reasons for this changed conduct became clear only much later because, unbeknownst to FMC at the time, on February 5, 2019, *before* the filing of the FMC application, Syngenta filed UK patent application GB 1901559.3, entitled "Herbicidal Mixtures."

70.   The GB 1901559.3 patent application does not name any FMC inventors.

71.   The GB 1901559.3 application claims herbicidal compositions, each of which contains one compound from two different genera of compounds:  (1) a genus of proprietary Syngenta active ingredients ("Formula 1"), and (2) a genus of the pyrazole-substituted pyrrolidine herbicides that FMC and Syngenta jointly invented, including VJP79 and its analogs ("Formula 2"):

72.     Syngenta's GB 1901559.3 application also discloses the confidential and proprietary processes and intermediates used to make VJP79 (Compound 2.1) and its analogs (Compounds 2.2-2.12, 2.15, and 2.43, 2.45, 2.49), including the Scheme (II) route.  *See* the GB 1901559.3 application, pp. 69–77.  In particular, the GB 1901559.3 application discloses both the thiolactam Scheme (I) and "linear" Scheme (II) synthetic routes, as well as pyrazole intermediates in those synthetic schemes for making VJP79 and its analogs.

73.     While the claims of Syngenta's GB 1901559.3 application were directed to mixtures, apparently based on Syngenta's belief that it was authorized to file patent applications on such mixtures under the Collaboration Agreement, Syngenta intended to obtain, and in the United States did subsequently obtain, claims that were not directed to mixtures, but instead to single compounds (and processes for making single compounds) incorporating the pyrazole invention.

74.     Notably, the biological examples contain no mixture data, even though the claims are purportedly directed to herbicidal mixtures.  The biological examples disclose activity data related to single pyrazole compounds, including VJP79 (Compound 2.1) and its analogs (Compounds 2.1-2.12 and 2.15).

75.     Syngenta preemptively disclosed the pyrazole compounds in the GB 1901559.3 application, even though it knew that FMC was seeking at that time to file an application claiming those very same compounds.  After delaying work on FMC's application, Syngenta ultimately informed FMC of its refusal to cooperate only after it had filed the GB 1910559.3 application on its own.

76.     Because Syngenta's GB 1901559.3 application was not visible to FMC, FMC did not learn about it until the later-filed U.S. counterpart applications published in August 2020 (which were the first applications to publish in the family).  FMC discovered Syngenta's unilateral efforts to patent compounds and processes in the SGF45 area on its own.

**2.      Syngenta's Further Prosecution of Patents Covering VJP79.**

77.     In addition, starting in May 2020 and again without any disclosure to FMC, Syngenta secretly filed a series of at least six U.S. patent applications claiming priority to GB 1901559.3, and likewise disclosing: the thiolactam Scheme (I) and "linear" Scheme (II) processes; the pyrazole compounds within the SGF45 lead area related to TVE29, including VJP79 and its analogs; and intermediates in those synthetic schemes for making VJP79 and its analogs.

78.     At least four of these applications have issued as patents that claim various aspects of FMC's intellectual property relating to VJP79 and its analogs.  The issued Syngenta patents include at least the following four patents:

79.     U.S. Patent No. 10,851,085 ("the '085 patent") issued on December 1, 2020, entitled "Pyrazole Derivatives," claims intermediates for making VJP79 and its analogs using synthesis Scheme (II) developed under the Collaboration Agreement.  It claims these intermediates alone, and not as part of an herbicidal mixture.

80.     U.S. Patent No. 10,865,197 ("the '197 patent"), issued on December 15, 2020, entitled "Enantioselective Process for Manufacture," claims processes for making VJP79 and its analogs using synthesis Scheme (II) developed under the Collaboration Agreement.  It does not claim herbicidal mixtures or processes for making herbicidal mixtures, nor does it claim herbicidal mixtures themselves.

81.     U.S. Patent No. 10,882,846 ("the '846 patent"), issued on January 5, 2021, entitled "Pyrazole Derivatives," claims intermediates for making VJP79 and its analogs using synthesis Scheme (II) developed under the Collaboration Agreement.  It claims these intermediates alone, and not as part of an herbicidal mixture.

82.     U.S. Patent No. 10,947,219 ("the '219 patent"), issued on March 16, 2021, entitled "Enantioselective Process for the Manufacture of Lactam Carboxylate Derivatives," claims processes for making VJP79 and its analogs using synthesis Scheme (II) developed under the Collaboration Agreement.  It does not claim herbicidal mixtures or processes for making herbicidal mixtures, nor does it claim herbicidal mixtures themselves.

83.     Moreover, the Patent Office issued a Notice of Allowance for a fifth patent application claiming priority to GB 1901559.3, U.S. Patent Application No. 16/782,796 ("the '796 application"), on March 10, 2021.  The '796 application claims processes for making VJP79 and its analogs using synthesis Scheme (I) developed under the Collaboration Agreement.

84.     A sixth Syngenta application claiming priority to GB 1901559.3, U.S. Patent Application No. 16/782,530 ("the '530 application"), filed February 5, 2020, is currently pending.  The '530 application discloses (and at present contains proposed claims directed to) herbicidal mixtures in which VJP79 and/or its analogs are a component.

85.     Syngenta's patent applications are an attempt to usurp FMC's patent rights.  None of Syngenta's patents and patent applications name any of the FMC scientists involved in the collaboration as inventors.  And all of Syngenta's U.S. patent applications and patents claim priority to GB 1901559.3, which was secretly filed before FMC filed its joint patent application. These priority claims suggest that Syngenta may claim that its patents are prior art to FMC's '946 patent application, thus potentially impacting the patentability of FMC's application.

86.     Syngenta's filings of patent applications covering VJP79 and its analogs, and intermediates and processes for producing them, also deprived FMC of the ability to control the prosecution of the patent applications, including the ability to determine prosecution strategy and to seek claims of its choosing on subject matter that it owned and its employees invented.

87.     In addition, Syngenta's patent applications disclose FMC's confidential trade secrets.  As with GB 1901559.3, the TVE29-related pyrazole-substituted compounds, intermediates, and Scheme (I) and Scheme (II) synthetic routes that these patents and patent applications disclose and claim were confidential trade secrets developed in collaboration with FMC's scientists.

88.     The information in the patent applications about VJP79 and its analogs was confidential and was not to be publicly disclosed without FMC's permission under the terms of the Agreement.  Yet Syngenta filed them without even notifying FMC, let alone getting its permission.

**H.     Syngenta's Patent Challenges.**

89.     Syngenta has, at the same time, launched a worldwide attempt to invalidate FMC's patent rights to the '202 patent and related family patents that claim TVE29 and its analogs.

21

90.     Syngenta's challenges include:

a.      A petition for post-grant review at the United States Patent and Trademark Office filed February 21, 2020;

b.      A notice of opposition at the European Patent Office filed August 31, 2020; and

c.      A request for invalidation at the China National Intellectual Property Administration filed in September 2020.

91.     Notably, as part of its opposition at the European Patent Office, Syngenta filed Revised Grounds of Opposition on November 5, 2020 that disclosed a series of compounds in the SGF45 lead area that had been discovered, and data about those compounds that had been collected, in connection with the collaboration.  *See, e.g.*, Revised Grounds of Opposition, EP3077374 (Nov. 5, 2020), at 23-26 (discussing IC 1, IC 2, IC 3, IC 4, IC 5).  Instead of honoring its confidentiality obligations to FMC, once the collaboration ended Syngenta continued to use confidential trade secrets that arose out of the collaboration to try to undermine FMC's intellectual property rights, and in particular to attempt to invalidate FMC's patents in the SGF45 lead area.

92.     Thus, despite Syngenta and FMC's mutual aim under the Collaboration Agreement to optimize TVE29 and other SGF45 lead area analogs, Syngenta seeks to undermine the Collaboration Agreement by its attempts to invalidate FMC's '202 patent and related family patents.  In other words, Syngenta realized the capabilities of this innovative compound and analogs during its collaboration with DuPont, had access to data and intellectual property shared as part of the collaboration, and now seeks to damage FMC's efforts to advance technology in the herbicide field utilizing information only available to it through the collaboration.

**CAUSES OF ACTION**

**COUNT I:  CORRECTION OF INVENTORSHIP OF THE '085 PATENT**

93.     The above paragraphs are incorporated by reference as if fully set forth herein.

94.     FMC scientists, specifically Dr. McMahon, Dr. Campbell, and Dr. Stevenson, made substantial contributions to, and collaborated with the Syngenta inventors in, the conception of the subject matter claimed in the '085 patent, including the pyrazole analogs within the SGF45 lead area, including VJP79, and the intermediates and synthetic schemes used for making VJP79 and other pyrazole analogs.

95.     Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson are therefore joint inventors of the '085 patent.

96.     FMC is the assignee of all rights to intellectual property developed by Dr. McMahon, Dr. Campbell, and Dr. Stevenson during the course of their employment at FMC, including all rights to the inventions claimed in the '085 patent.

97.     Pursuant to 35 U.S.C. § 256, FMC is entitled to a declaration that Travis McMahon, Matthew Campbell, and/or Thomas Stevenson are inventors of U.S. Patent No. 10,851,085 and an order correcting inventorship of the '085 patent to add Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson.

**COUNT II:  CORRECTION OF INVENTORSHIP OF THE '197 PATENT**

98.     The above paragraphs are incorporated by reference as if fully set forth herein.

99.     FMC scientists, specifically Dr. McMahon, Dr. Campbell, and Dr. Stevenson, made substantial contributions to, and collaborated with the Syngenta inventors in, the conception of the subject matter claimed in the '197 patent, including the pyrazole analogs

within the SGF45 lead area, including VJP79, and the intermediates and synthetic schemes used for making VJP79 and other pyrazole analogs.

100.    Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson are therefore joint inventors of the '197 patent.

101.    FMC is the assignee of all rights to intellectual property developed by Dr. McMahon, Dr. Campbell, and Dr. Stevenson during the course of their employment at FMC, including all rights to the inventions claimed in the '197 patent.

102.    Pursuant to 35 U.S.C. § 256, FMC is entitled to a declaration that Travis McMahon, Matthew Campbell, and/or Thomas Stevenson are inventors of U.S. Patent No. 10,865,197 and an order correcting inventorship of the '197 patent to add Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson.

**COUNT III:  CORRECTION OF INVENTORSHIP OF THE '846 PATENT**

103.    The above paragraphs are incorporated by reference as if fully set forth herein.

104.    FMC scientists, specifically Dr. McMahon, Dr. Campbell, and Dr. Stevenson, made substantial contributions to, and collaborated with the Syngenta inventors in, the conception of the subject matter claimed in the '846 patent, including the pyrazole analogs within the SGF45 lead area, including VJP79, and the intermediates and synthetic schemes used for making VJP79 and other pyrazole analogs.

105.    Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson are therefore joint inventors of the '846 patent.

106.    FMC is the assignee of all rights to intellectual property developed by Dr. McMahon, Dr. Campbell, and Dr. Stevenson during the course of their employment at FMC, including all rights to the inventions claimed in the '846 patent.

107.    Pursuant to 35 U.S.C. § 256, FMC is entitled to a declaration that Travis McMahon, Matthew Campbell, and/or Thomas Stevenson are inventors of U.S. Patent No. 10,882,846 and an order correcting inventorship of the '846 patent to add Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson.

**COUNT IV:  CORRECTION OF INVENTORSHIP OF THE '219 PATENT**

108.    The above paragraphs are incorporated by reference as if fully set forth herein.

109.    FMC scientists, specifically Dr. McMahon, Dr. Campbell, and Dr. Stevenson, made substantial contributions to, and collaborated with the Syngenta inventors in, the conception of the subject matter claimed in the '219 patent, including the pyrazole analogs within the SGF45 lead area, including VJP79, and the intermediates and synthetic schemes used for making VJP79 and other pyrazole analogs.

110.    Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson are therefore joint inventors of the '219 patent.

111.    FMC is the assignee of all rights to intellectual property developed by Dr. McMahon, Dr. Campbell, and Dr. Stevenson during the course of their employment at FMC, including all rights to the inventions claimed in the '219 patent.

112.    Pursuant to 35 U.S.C. § 256, FMC is entitled to a declaration that Travis McMahon, Matthew Campbell, and/or Thomas Stevenson are inventors of U.S. Patent No. 10,947,219 and an order correcting inventorship of the '219 patent to add Dr. McMahon, Dr. Campbell, and/or Dr. Stevenson.

**COUNT V:  BREACH OF CONFIDENTIALITY OBLIGATIONS**

113.    The above paragraphs are incorporated by reference as if fully set forth herein.

114.    The Collaboration Agreement is a valid and enforceable contract.

25

115.    The Collaboration Agreement provides that the parties will not use "Confidential Information for *any* purpose other than" "to evaluate and further optimize herbicides selected for collaboration projects under th[e] Agreement with the goal of advancing herbicides within Candidate Herbicide Lead Areas to the point where the Parties can evaluate their suitability for commercialization."  CA, 1.1(hh), 3.2(a).  The Collaboration Agreement further provides that the parties will not "publish any Confidential Information unless approved in writing in accordance with the provisions of th[e] Agreement."  CA, 3.2(c).

116.    FMC and Syngenta exchanged "Confidential Information" related to VJP79 and other pyrazole analogs as well as processes for synthesizing VJP79 and other pyrazole analogs. These compounds were developed for the "Purpose" of the Agreement.  Thus, absent the written consent of FMC, information related to these compounds was not to be disclosed.

117.    Syngenta's disclosure of VJP79 and other pyrazole analogs, and of processes and intermediates for synthesizing these compounds, in public filings, including its patent applications, patents, and filings in the European Patent Office, without FMC's knowledge or consent, was a breach of Syngenta's confidentiality obligations pursuant to the Agreement.

118.    Upon information and belief, Syngenta knowingly and willfully breached its confidentiality obligations.

119.    FMC has been irreparably harmed by the disclosure of its confidential and proprietary information.  FMC thus seeks equitable relief barring Syngenta from using and profiting from its illicit disclosures.  FMC seeks an order (i) requiring Syngenta to assign to FMC its interest in GB 1901559.3 and all patents and applications claiming priority to GB 1901559.3 (including those U.S. patents and patent applications referenced above); (ii) requiring Syngenta to correct the inventorship of patent applications it filed involving inventions to which

26

FMC employees contributed; and (iii) prohibiting Syngenta from developing, manufacturing, marketing, commercializing, or otherwise using products related to VJP79 and VJP79 analogs.

## COUNT VI:  MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT

120.    The above paragraphs are incorporated by reference as if fully set forth herein.

121.    FMC (and FMC's predecessor to the Collaboration Agreement, DuPont) disclosed to Syngenta proprietary trade secret information belonging to FMC, including, but not limited to, the structure of pyrazole analogs within the SGF45 lead area; data and know-how related to TVE29 and other SGF45 lead area analogs, including VJP79 and other pyrazole analogs; and processes and methods for synthesizing TVE29, VJP79, and other analogs within the SGF45 lead area.

122.    FMC's trade secrets are related to products or services intended for use in interstate or foreign commerce.  The very purpose of the parties' collaborative efforts, including the sharing of FMC's trade secrets, was to evaluate and optimize herbicides with the goal of advancing herbicides that could be commercialized and eventually used in interstate and foreign commerce.

123.    FMC went to great lengths to protect its trade secrets.  For example, FMC requires its employees to keep all of its trade secrets confidential and implements nondisclosure agreements before providing anyone access to its trade secrets.  FMC also takes measures to restrict access to its computer servers and facilities that contain its trade secret information. Further, FMC requires all commercial partners to enter into confidentiality agreements before providing them access to FMC's trade secrets.

124.    The Collaboration Agreement contained such a confidentiality agreement.  It imposed strict confidentiality on Syngenta with respect to FMC's Confidential Information,

including FMC's trade secrets.  Syngenta thus had a duty to keep confidential FMC's trade secrets.

125.    Syngenta's GB 1901559.3 patent application and its applications claiming priority to GB 1901559.3 disclosed FMC's trade secret information, including, but not limited to, the structure of VJP79 and other pyrazole analogs within the SGF45 lead area, as well as data and know-how related to those compounds.  Prior to Syngenta's disclosures, these trade secrets were not readily ascertainable through proper means by others.  FMC did not authorize Syngenta to disclose such trade secrets in filing GB 1901559.3 or any other patent application claiming priority to GB 1901559.3.

126.    By publishing FMC's trade secret information in its patent applications, and later in issued patents, Syngenta misappropriated FMC's trade secrets.

127.    Upon information and belief, Syngenta's misappropriation was willful and malicious.

128.    FMC's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of such information. Indeed, commercial partners like Syngenta seek out and agree to collaborate with FMC, in part, to obtain access to FMC's trade secrets.

129.    FMC was damaged by Syngenta's misappropriation, including in the form of loss of patent rights, trade secrets, and diminution in the value of FMC's intellectual property.  FMC seeks damages for Syngenta's misappropriation, including actual damages to FMC and Syngenta's unjust enrichment.

130.    FMC also seeks equitable relief in the form of an injunction barring Syngenta from using or profiting from FMC's trade secrets.  FMC seeks an order (i) requiring Syngenta to assign to FMC its interest in GB 1901559.3 and all patents and applications claiming priority to GB 1901559.3  (including those U.S. patents and patent applications referenced above); (ii) requiring Syngenta to correct the inventorship of patent applications it filed involving inventions to which FMC employees contributed; and (iii) prohibiting Syngenta from developing, manufacturing, marketing, commercializing, or otherwise using products related to VJP79 and other pyrazole analogs or derivatives.

## COUNT VII:  MISAPPROPRIATION OF TRADE SECRETS
## UNDER NEW YORK LAW

131.    The above paragraphs are incorporated by reference as if fully set forth herein.

132.    FMC (and FMC's predecessor to the Collaboration Agreement, DuPont) disclosed to Syngenta proprietary trade secret information belonging to FMC, including, but not limited to, the structure of pyrazole analogs within the SGF45 lead area; data and know-how related to TVE29 and other SGF45 lead area analogs, including VJP79 and other pyrazole analogs; and processes and methods for synthesizing TVE29, VJP79, and other analogs within the SGF 45 lead area.

133.    FMC went to great lengths to protect its trade secrets.  For example, FMC requires its employees to keep all of its trade secrets confidential, and implements nondisclosure agreements before providing anyone access to its trade secrets.  FMC also takes measures to restrict access to its computer servers and facilities that contain its trade secret information.  Further, FMC requires all commercial partners to enter into confidentiality agreements before providing them access to FMC's trade secrets.

134.    The Collaboration Agreement contained such a confidentiality agreement.  It imposed strict confidentiality on Syngenta with respect to FMC's Confidential Information, including FMC's trade secrets.  Syngenta thus had a duty to keep confidential FMC's trade secrets.

135.    Syngenta's GB 1901559.3 patent application and its applications claiming priority to GB 1901559.3 disclose FMC's trade secret information, including, but not limited to, the structure of VJP79 and other pyrazole analogs within the SGF45 lead area, as well as data and know-how related to those compounds.  Prior to Syngenta's disclosures, these trade secrets were not readily ascertainable through proper means by others.  FMC did not authorize Syngenta to disclose such trade secrets in filing GB 1901559.3 or any other patent application claiming priority to GB 1901559.3.

136.    By publishing FMC's trade secret information in its patent applications, and later in issued patents, Syngenta misappropriated FMC's trade secrets.

137.    Upon information and belief, Syngenta's misappropriation was willful and malicious.

138.    FMC's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of such information. Indeed, commercial partners like Syngenta seek out and agree to collaborate with FMC, in part, to obtain access to FMC's trade secrets.

139.    FMC was damaged by Syngenta's misappropriation, including in the form of loss of patent rights, trade secrets, and diminution in the value of FMC's intellectual property.  FMC

seeks damages for Syngenta's misappropriation, including actual damages to FMC and Syngenta's unjust enrichment.

140.    FMC seeks equitable relief in the form of an injunction barring Syngenta from using or profiting from FMC's trade secrets.  FMC also seeks an order (i) requiring Syngenta to assign to FMC its interest in GB 1901559.3 and all patents and applications claiming priority to GB 1901559.3 (including those U.S. patents and patent applications referenced above); (ii) requiring Syngenta to correct the inventorship of patent applications it filed involving inventions to which FMC employees contributed; and (iii) prohibiting Syngenta from developing, manufacturing, marketing, commercializing, or otherwise using products related to VJP79 and other pyrazole analogs or derivatives.

## PRAYER FOR RELIEF

WHEREFORE, FMC respectfully requests that this Court enter judgment in its favor against Syngenta and grant the following relief:

A.    A declaration that Travis McMahon, Thomas Stevenson, and/or Matthew Campbell are inventors of U.S. Patent No. 10,851,085;

B.    An order directing the United States Patent and Trademark Office to correct inventorship of U.S. Patent No. 10,851,085 to add Travis McMahon, Thomas Stevenson, and/or Matthew Campbell as inventors;

C.    A declaration that Travis McMahon, Thomas Stevenson, and/or Matthew Campbell are inventors of U.S. Patent No. 10,865,197;

D.    An order directing the United States Patent and Trademark Office to correct inventorship of U.S. Patent No. 10,865,197 to add Travis McMahon, Thomas Stevenson, and/or Matthew Campbell as inventors;

E.      A declaration that Travis McMahon, Thomas Stevenson, and/or Matthew Campbell are inventors of U.S. Patent No. 10,882,846;

F.      An order directing the United States Patent and Trademark Office to correct inventorship of U.S. Patent No. 10,882,846 to add Travis McMahon, Thomas Stevenson, and/or Matthew Campbell as inventors;

G.      A declaration that Travis McMahon, Thomas Stevenson, and/or Matthew Campbell are inventors of U.S. Patent No. 10,947,219;

H.      An order directing the United States Patent and Trademark Office to correct inventorship of U.S. Patent No. 10,947,219 to add Travis McMahon, Thomas Stevenson, and/or Matthew Campbell as inventors;

I.      An award to FMC of its reasonable attorneys' fees and costs in this action because this is an exceptional case under 35 U.S.C. § 285;

J.      A declaratory judgment that Syngenta breached its confidentiality obligations under the Collaboration Agreement;

K.      A declaratory judgment that Syngenta misappropriated FMC trade secrets;

L.      An order requiring Syngenta to assign to FMC its ownership interest in GB 1901559.3 and all patents and applications claiming priority to GB 1901559.3 (including those U.S. patents and patent applications referenced above);

M.      A permanent injunction prohibiting Syngenta from developing, manufacturing, marketing, commercializing, or otherwise using products related to VJP79 and VJP79 analogs or derivatives;

N.      An order requiring Syngenta to correct inventorship of all pending patent applications claiming priority to GB 1901559.3 (including those U.S. patents and patent

applications referenced above) and adding Travis McMahon, Thomas Stevenson, and/or

Matthew Campbell as inventors;

O.      An award of compensatory damages, including FMC's actual losses and

Syngenta's unjust enrichment;

P.      An award of punitive and exemplary damages;

Q.      An award to FMC of its costs and expenses in this action;

R.      Such further and additional relief as the Court deems just and proper.

## JURY DEMAND

FMC, by and through its undersigned counsel, hereby demands, pursuant to Fed. R. Civ.

P. 38, a trial by jury on all claims so triable in this action.

Dated:  April 13, 2021                    Respectfully submitted,

                                          /s/ Julia M. Hilliker
                                          Julia M. Hilliker
                                          HODGSON RUSS LLP
                                          140 Pearl Street, Suite 100
                                          Buffalo, New York 14202
                                          (716) 856-4000
                                          jhillike@hodgsonruss.com


                                          Dane H. Butswinkas (*pro hac vice* application forthcoming)
                                          Richmond T. Moore (*pro hac vice* application forthcoming)
                                          David M. Krinsky (*pro hac vice* application forthcoming)
                                          WILLIAMS & CONNOLLY LLP
                                          725 Twelfth St. NW
                                          Washington, DC 20005
                                          (202) 434-5000

                                          *Attorneys for FMC Corporation*

33