10:06:58

1                    UNITED STATES DISTRICT COURT

2                  WESTERN DISTRICT OF NEW YORK

3
     - - - - - - - - - - - - - - X
4    FMC CORPORATION                        21CV487(GWC)

5                        Plaintiff      Buffalo, New York
     v.
6    SYNGENTA CROP PROTECTION AG )    September 28, 2021
                     Defendant              10:00 a.m.
7    - - - - - - - - - - - - - - X
     **ORAL ARGUMENT**
8
                    TRANSCRIPT OF PROCEEDINGS
9          BEFORE THE HONORABLE GEOFFREY W. CRAWFORD
                   UNITED STATES DISTRICT JUDGE
10

11               RICHMOND T. MOORE, ESQ.
                 DANE H. BUTSWINKAS, ESQ.
12               Williams & Connolly
                 725 Twelfth Street, N.W.
13               Washington, D.C 20005
                     -and-
14               JULIA M. HILLIKER, ESQ.
                 Hodgson Russ, LLP
15               The Guaranty Building
                 140 Pearl Street, Suite 100
16               Buffalo, New York 14202

17               CRAIG R. BUCKI, ESQ.
                 Phillips Lytle, LLP
18               One Canalside
                 125 Main Street
19               Buffalo, New York 14203-2887
                     -and-
20               RYAN MOORMAN, ESQ.
                 MARK PREMO-HOPKINS, ESQ.
21               Kirkland & Ellis, LLP
                 300 North LaSalle Street
22               Chicago, Illinois 60654

23

24

25   **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                    **Karenclark1013@AOL.com**

```
 1                      P R O C E E D I N G
 2              *                *                *
 3
10:07:34   4          THE CLERK:  Civil action FMC Corporation v.
10:07:46   5  Syngenta Crop Protection AG, docket No. 21CV487.  This
10:07:51   6  proceeding is scheduled for a motion hearing.  Counsel,
10:07:54   7  please state your name and the party you represent for
10:07:57   8  the record.  Starting with the Plaintiffs, please
10:08:01   9          MS. HILLIKER:  Good morning, your Honor.
10:08:02  10  Julia Hilliker from Hodgson Russ on behalf of FMC, and I
10:08:07  11  have with me Dane Butswinkas and Richard Moore.
10:08:11  12          THE COURT:  Your last name?
10:08:12  13          MS. HILLIKER:  Hilliker, H-i-l-l-i-k-e-r.
10:08:16  14          THE COURT:  Great, thank you.
10:08:18  15          MR. BUCKI:  Yes.  Good morning, your Honor.
10:08:20  16  Craig Bucki, B-u-c-k-i from the law firm Phillips Lytle,
10:08:27  17  LLP in Buffalo.  And from Kirkland Ellis, Ryan Moorman
10:08:33  18  and Mark Premo-Hopkins.
10:08:35  19          THE COURT:  I really appreciate the papers.
10:08:37  20  They were very carefully done and very thorough.  And
10:08:40  21  I've had a chance to go through them all.  I appreciate
10:08:43  22  the trip that many of you have made.  We have two hours
10:08:47  23  set aside.  I don't know that we will need it all.  But
10:08:49  24  there is plenty of time for everyone to say everything
10:08:52  25  they have to say.  There is absolutely no rush this
```

```
  1          FMC. CORP V. SYNGENTA CORP PROTECTION AG
  2  morning.  And why don't I turn things over to the moving
  3  party?
  4          MR. MOORMAN:  Thank you, your Honor.  Ryan
  5  Moorman on behalf of the defendants.  Thank you, your
  6  Honor.  I am Ryan Moorman on behalf of the defendants.
  7  Your Honor, the claims in FMC's Complaint arise out of a
  8  2015 Collaboration Agreement that it entered with
  9  Syngenta to research and develop new Herbicide
 10  Compounds.  Section 9.7 of that Complaint, requires the
 11  parties to confidentially arbitrate any dispute that
 12  arises out of the agreement, including the claims that
 13  FMC brought here.  FMC knows this, your Honor.  Two
 14  years ago, FMC initiated arbitration bringing similar
 15  claims to the claims that FMC brought in this case and
 16  seeking overlapping relief with the relief that FMC
 17  seeks here.  But while that arbitration was pending,
 18  your Honor, FMC wanted to exact additional concessions
 19  from Syngenta, so its CEO sent a letter to -- Syngenta's
 20  CEO asking it to cave to additional demands or else
 21  there would be very public litigation that it implied
 22  Syngenta would want to avoid.  Syngenta, of course,
 23  refused the demands of FMC, and this litigation
 24  followed.  Your Honor, we've already initiated an
 25  arbitration demand in the AAA trying to avoid the claims
```

|         |    |                                                         |
|---------|----|---------------------------------------------------------|
|         | 1  | FMC. CORP V. SYNGENTA CORP PROTECTION AG                |
| 10:10:34 | 2  | that FMC brought in this case.  And this Court should   |
| 10:10:37 | 3  | compel arbitration for two independent reasons.  The    |
| 10:10:40 | 4  | first of the two independent reasons is that section 9.7 |
| 10:10:44 | 5  | of the Collaboration Agreement squarely covers the      |
| 10:10:48 | 6  | claims that FMC has brought here.  Second, and          |
| 10:10:51 | 7  | independently, your Honor, Second Circuit precedent     |
| 10:10:54 | 8  | requires the Court to let the arbitrators decide the    |
| 10:10:59 | 9  | question of arbitrability when the parties incorporate  |
| 10:11:02 | 10 | the AAA rules in their arbitration clause, which is what |
| 10:11:07 | 11 | the parties did here.                                   |
| 10:11:08 | 12 | Let me start with the first of the two                  |
| 10:11:10 | 13 | independent reasons, your Honor.  The arbitration clause |
| 10:11:12 | 14 | that the parties have in this case, which calls all     |
| 10:11:16 | 15 | claims that arise out of a Collaboration Agreement, the |
| 10:11:21 | 16 | Second Circuit calls that the paradigm of a broad       |
| 10:11:24 | 17 | arbitration clause.  And when parties choose a broad    |
| 10:11:28 | 18 | arbitration clause, there is a presumption of           |
| 10:11:30 | 19 | arbitrability that applies to every allegation that     |
| 10:11:34 | 20 | touches or implicates the parties' agreement.  When     |
| 10:11:35 | 21 | there is that broad arbitration clause, courts can only |
| 10:11:39 | 22 | decline to compel arbitration if the parties seeking to |
| 10:11:44 | 23 | avoid it, here that is FMC bears the burden of defeating |
| 10:11:47 | 24 | the motion, only if they can show with positive         |
| 10:11:49 | 25 | assurance that the parties did not intend to arbitrate  |

```
 1            FMC. CORP V. SYNGENTA CORP PROTECTION AG
10:11:52  2   the claims.
10:11:53  3            FMC can't meet that burden, your Honor.  It
10:11:57  4   brings three types of claims.  The first buckets are
10:11:59  5   what I will call inventorship claims under Section 256.
10:12:03  6   Under 256, they seek to add FMC employees as inventors
10:12:08  7   on patents that have already issued to Syngenta.  And
10:12:11  8   the basis of FMC's claim, your Honor, is that work it
10:12:15  9   performed under the Collaboration Agreement that has the
10:12:18 10   arbitration clause, entitles it to that additional
10:12:22 11   ownership of the patents.
10:12:23 12            THE COURT:  Can I ask you a question about
10:12:24 13   that?
10:12:24 14            MR. MOORMAN:  Of course, your Honor.
10:12:26 15            THE COURT:  Are you satisfied that the
10:12:27 16   arbitration panel can give FMC that relief, if it's
10:12:31 17   appropriate on the merits.
10:12:33 18            MR. BUCKI:  Yes, your Honor.  That is
10:12:34 19   absolutely the case.  There are two cases that we had in
10:12:37 20   our brief that are directly on point.  I can skip ahead
10:12:41 21   to those, your Honor.
10:12:42 22            THE COURT:  I wondered how it works since
10:12:45 23   the panel works in total secrecy and they would issue a
10:12:50 24   ruling that would go to the patent regulator.
10:12:54 25            MR. BUCKI:  That's absolutely, correct, your
```

```
 1              FMC. CORP V. SYNGENTA CORP PROTECTION AG
 2   Honor.   There is the Dansko case, SDNY case, just like
 3   in FMC, in this case, it involved a Collaboration
 4   Agreement between two parties.  The Plaintiff, in that
 5   case, alleged that the defendant had misappropriated
 6   confidential information by including that confidential
 7   information in its patent filings.  The Plaintiff in
 8   that case brought inventorship claims under the same
 9   statute that FMC brought here and the Court compelled
10   arbitration of the inventorship claims.  Invista v.
11   Rhodia, 503 F. Supp 2d 195, that is a district of DC
12   case.  This actually lays out the process that the
13   arbitration panel would follow and the parties would
14   follow thereafter.  The way the Court in that case
15   described an is an arbitration clause reflects an
16   agreement of the parties to abide by the order of the
17   panel.  So what the Court says is the parties can simply
18   or would be required to simply implement between
19   themselves the order of the panel.  If that ruling was
20   to add inventors to the patent, the parties have a
21   process to do that.  And if they refused, you could
22   enforce that judgment in Federal Court, and that would
23   have the force of law just like your Honor, to comply
24   with that.  Those cases, your Honor, really are on all
25   fours.  They address the exact same claims that FMC
```

|    |    |
|----|----|
| | 1 |
| 10:14:17 | 2 |
| 10:14:19 | 3 |
| 10:14:22 | 4 |
| 10:14:26 | 5 |
| 10:14:30 | 6 |
| 10:14:33 | 7 |
| 10:14:36 | 8 |
| 10:14:39 | 9 |
| 10:14:42 | 10 |
| 10:14:46 | 11 |
| 10:14:49 | 12 |
| 10:14:51 | 13 |
| 10:14:54 | 14 |
| 10:14:59 | 15 |
| 10:15:02 | 16 |
| 10:15:07 | 17 |
| 10:15:12 | 18 |
| 10:15:17 | 19 |
| 10:15:17 | 20 |
| 10:15:18 | 21 |
| 10:15:22 | 22 |
| 10:15:25 | 23 |
| 10:15:27 | 24 |
| 10:15:32 | 25 |

1    FMC. CORP V. SYNGENTA CORP PROTECTION AG

2  brings here, and they resolve the question clearly in

3  favor of Syngenta.  Holding that inventorship claims

4  under 256 are arbitrable, and the remedy that a party

5  like FMC seeks can be implemented through the

6  arbitration proceeding.  The threshold question, your

7  Honor, before we get to that is whether the claims arise

8  out of the Collaboration Agreement.  And they clearly do

9  in this case.  As you saw in the Complaint, your Honor,

10  FMC details the factual basis of their right to

11  inventorship by explaining the work they performed under

12  the collaboration.  They explained what the

13  collaboration required.  The collaboration between the

14  parties.  And they expressly say that the creation of

15  the EGP79, that is the compound in question, was the

16  result of the collaborative relationship between FMC and

17  Syngenta as contemplated by the Collaboration Agreement.

18  It implicates the Collaboration Agreement and it arises

19  out of the Collaboration Agreement.  FMC does more than

20  that, as you saw in their Complaint, and as we detailed

21  in our motion, they spent 22 consecutive paragraphs

22  explaining the legal rights under the Collaboration

23  Agreement, explaining why that entitles them to the

24  ownership they claim they are entitled to in these

25  Complaints.  These claims are arbitrable.  This is what

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:15:35  2    and arbitration clause that is intended to cover all

10:15:37  3    claims that arise under an agreement are supposed to

10:15:40  4    require arbitration of.

10:15:41  5             There are two more claims that FMC brings.

10:15:44  6    They bring a breach of contract claim.  A breach of

10:15:46  7    contract that, obviously, implicates the agreement.  And

10:15:48  8    they also bring a trade secret claim, but this just

10:15:52  9    turns on resolution of the contract claim.  Under their

10:15:55  10   theory of the case, we used the confidential information

10:15:58  11   in a way that the contract prohibited us doing.

10:15:58  12   Resolving that question requires resolution of the

10:16:04  13   contract claim.  So the trade secret claim is almost co

10:16:06  14   extensive with the contract claim, both of those

10:16:09  15   obviously arise out of the agreement.

10:16:11  16             So I just touched on those two cases, your

10:16:14  17   Honor, that I think are really on all fours here that

10:16:16  18   require the result or are very persuasive authorities to

10:16:21  19   why your Honor should compel arbitration.  I think it's

10:16:24  20   important to point out, your Honor, FMC does not dispute

10:16:28  21   these points.  They don't dispute the meaning of the

10:16:31  22   agreement, that Section 9.7 is a broad arbitration

10:16:35  23   clause that creates a presumption of arbitrability.  FMC

10:16:42  24   does dispute the law that the broad arbitration clauses

10:16:45  25   -- excuse me -- that broad arbitration clause requires

1        FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:16:45   2   arbitration unless they can show with positive assurance

10:16:49   3   that the parties did not intend to arbitrate the clause.

10:16:53   4   And FMC does not dispute the facts.  They are not

10:16:57   5   contending that the allegation do not arise out of the

10:17:02   6   collaboration.  And they don't make that because they

10:17:04   7   can't.  They invoked the personal jurisdiction in there.

10:17:07   8   The basis of personal jurisdiction in their Complaint is

10:17:10   9   to the -- they consent to the extent that Syngenta has

10:17:15  10   in the Collaboration Agreement.  The Court would

10:17:17  11   otherwise would have personal jurisdiction over

10:17:20  12   Syngenta.  But Syngenta consented to jurisdiction over

10:17:20  13   any claim that arises out of the Collaboration

10:17:27  14   Agreement.  So to bring this Complaint in this Court,

10:17:30  15   FMC already alleges this Complaint, the one it filed in

10:17:33  16   this Court, arises out of the Collaboration Agreement.

10:17:36  17   You can't reconcile the two agreements.

10:17:39  18        Second, your Honor, as I've already

10:17:41  19   mentioned, FMC has already brought overlapping claims in

10:17:44  20   arbitration.  And Syngenta filled out an arbitration

10:17:48  21   demand that the parties have been awarded.

10:17:52  22        THE COURT:  I've read that.  I just

10:17:53  23   wondered, I got glimpses in the papers of where the

10:17:57  24   panel is in its process, but I wonder if you could walk

10:18:03  25   me through it.

FMC. CORP V. SYNGENTA CORP PROTECTION AG

MR. MOORMAN:  Sure.  Your Honor, as we mentioned in the Complaint, the parties brought competing arbitration demands.  Syngenta alleged that it was entitled to commercialize the compound that the parties developed.  FMC brought allegations that it was the owner of the IP and that Syngenta needed to assign its ownership to FMC.  Different causes of action, but overlapping relief.  And similar bases to the bases of relief that FMC seeks here.  We arbitrated that claim in September of last year, the panel has recently issued an interim award finding in favor of Syngenta on the contract issues.  And it's now, the panel, is moving to the what it is calling the licensing phase.  It's basically a damages or relief phase where it is going to create the licensing under which Syngenta is going to be commercializing those compounds.

THE COURT:  Is there a schedule and hearing set and so forth?

MR. MOORMAN:  Very recently, actually, your Honor, the panel has retained a neutral expert to assist it in its case.  And I don't know the exact date, I think the second full week in January, I think January 10th, there will be a four-day hearing to resolve all of the issues that are outstanding.  That includes the

|        |    |                                                      |
|--------|----|------------------------------------------------------|
|        | 1  | FMC. CORP V. SYNGENTA CORP PROTECTION AG             |
| 10:19:10 | 2  | terms by which Syngenta can commercialize these    |
| 10:19:13 | 3  | compounds.  The panel also said in that order it will |
| 10:19:18 | 4  | resolve the claims -- excuse me that FMC brought in its |
| 10:19:22 | 5  | demands.  All of those issues will be resolved after the |
| 10:19:25 | 6  | January of 2022 hearing.                            |
| 10:19:28 | 7  | THE COURT:  Okay.  And are these the lawyers        |
| 10:19:29 | 8  | that are involved?                                  |
| 10:19:29 | 9  | MR. MOORMAN:  Yes, that is fair.  Different         |
| 10:19:31 | 10 | counsel for FMC that did the actual arbitration hearing. |
| 10:19:35 | 11 | FMC has since retained the lawyers in this courtroom |
| 10:19:38 | 12 | today to, I believe, I'll let them tell you the scope of |
| 10:19:41 | 13 | the engagement.  I believe they are taking the lead on |
| 10:19:44 | 14 | the hearing, but there is still involvement of the law |
| 10:19:47 | 15 | firm that did the initial arbitration hearing.     |
| 10:19:50 | 16 | THE COURT:  So nobody has put the brakes on        |
| 10:19:52 | 17 | in the arbitration process.  Everybody is charging ahead |
| 10:19:56 | 18 | preparing for this.                                |
| 10:19:58 | 19 | MR. MOORMAN:  That's correct, absolutely.          |
| 10:20:00 | 20 | THE COURT:  All right.                             |
| 10:20:01 | 21 | MR. MOORMAN:  So let me pick up where I left       |
| 10:20:04 | 22 | off, your Honor.  So, as I mentioned, FMC is not    |
| 10:20:09 | 23 | challenging the premise of FMC's motion.  They agree on |
| 10:20:15 | 24 | the law and on the facts.  How does FMC try to avoid |
| 10:20:19 | 25 | arbitration of this dispute.  They point to section 4.3 |

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:20:23   2   of the Collaboration Agreement.  And I think the upshot

10:20:25   3   of their argument is section 4.3 silently overrode the

10:20:34   4   express language of 9.7, which is the arbitration clause

10:20:38   5   in this case.  Your Honor, there is nothing in section

10:20:41   6   4.3 that does what FMC claims that section 4.3 did.  And

10:20:46   7   there are a few reasons for that.  First of all, all

10:20:49   8   section 4.3 does, it lays out a dispute or an internal

10:20:53   9   dispute resolution process that the parties must follow

10:20:56   10  that only applies, the parties agree, during the term of

10:21:00   11  the agreement.  The agreement has since expired, so the

10:21:02   12  parties agree that 4.3 has since expired.  Under the

10:21:06   13  terms of that internal resolution party, for example,

10:21:08   14  the party whose patents are challenged, they get

10:21:12   15  additional rights, 90-day resolution process, an opinion

10:21:16   16  of counsel from the other side laying out the basis of

10:21:18   17  their ultimate challenge, and if the parties can't

10:21:21   18  resolve that, the party whose challenge gets to choose

10:21:24   19  during the 90-day period to go to arbitration or court.

10:21:28   20  There is nothing in 4.3 that remotely suggests or carves

10:21:33   21  out patent challenges all together from the arbitration

10:21:37   22  clause in 9.7.  First of all, 4.3 still requires

10:21:41   23  arbitration, even if it applied, it still requires

10:21:44   24  arbitration at the end of the process.  It doesn't carve

10:21:48   25  out patent challenges.  And there is nothing suggesting,

|   |   | FMC. CORP V. SYNGENTA CORP PROTECTION AG |
|---|---|---|
| 10:21:51 | 2 | as FMC must shows to resist this motion, that the |
| 10:21:55 | 3 | parties didn't intend to arbitrate patent disputes. |
| 10:21:59 | 4 | That is because it requires arbitration of patent |
| 10:22:04 | 5 | disputes. |
| 10:22:04 | 6 | THE COURT:  I went back and read the two |
| 10:22:06 | 7 | sections, a couple times.  You read them more than I |
| 10:22:09 | 8 | did.  I think the right word is asynchronis, as if they |
| 10:22:13 | 9 | were inserted by different attorneys with different |
| 10:22:17 | 10 | areas of expertise.  They would have created quite a |
| 10:22:21 | 11 | headache had we been in the middle of the contract |
| 10:22:25 | 12 | period, because they really, they are similar roots, but |
| 10:22:29 | 13 | quite different.  Any wisdom from you on kind of how we |
| 10:22:34 | 14 | got into this funny little pinch. |
| 10:22:37 | 15 | MR. MOORMAN:  So I'm reading it from the |
| 10:22:38 | 16 | same perspective from your Honor, if I'm making an |
| 10:22:41 | 17 | inference on how they ended up here.  They clearly |
| 10:22:47 | 18 | reflect the intention to arbitrate the claims.  That is |
| 10:22:47 | 19 | what 9.7 accomplished.  4.3 then assures that you end up |
| 10:22:53 | 20 | in arbitration if that applies.  I think if you're |
| 10:22:55 | 21 | working together during the collaboration, they wanted |
| 10:23:00 | 22 | to exhaust an effort to internally resolve the patent |
| 10:23:04 | 23 | challenge before we get to that dispute resolution |
| 10:23:07 | 24 | process.  What it tried to accomplish what to give the |
| 10:23:09 | 25 | challenged party just some extra rights as part of the |

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:23:13   2    process.  They get that right, they get that 90-day

10:23:15   3    period, and they get that opinion of counsel.  And then,

10:23:17   4    at their own election, if they want, instead of

10:23:21   5    arbitrating the claims, they can just go to court

10:23:24   6    instead, during the 90-day window, though.  It's not a

10:23:27   7    total superseding arbitration clause in 9.7.

10:23:27   8          THE COURT:  Or mandatory mediation.  They

10:23:29   9    call it something different, that is what it looks like.

10:23:31   10         MR. MOORMAN:  Exactly.  There are extra

10:23:33   11   rights in an effort to resolve it before we get to

10:23:37   12   arbitration.  I think the important point for our motion

10:23:39   13   is the burden is very high to defeat the presumption of

10:23:47   14   arbitrability.  They keep using the word positive

10:23:47   15   assurance.  I'm taking that to mean expressly state or

10:23:53   16   clearly state that there is an intention not to

10:23:54   17   arbitrate a particular claim.  I don't think 4.3 comes

10:23:56   18   close to that.  I think 4.3 reinforces the agreement the

10:24:01   19   parties had to arbitrate their disputes.  As I think you

10:24:04   20   were getting to, your Honor, the other basis is 4.3 just

10:24:08   21   doesn't apply anymore.  The term of the agreement has

10:24:10   22   expired.  As your Honor is looking at this agreement

10:24:13   23   deciding whether the claim ought to or ought not to be

10:24:16   24   arbitrated, the only provision that applies is section

10:24:19   25   9.7.  4.3 is gone, it has no force anymore.  9.7 still

1    FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:24:25   2   applies.  And as I mentioned, your Honor, I don't think

10:24:28   3   they are disputing their claim arises out of the, under

10:24:32   4   section 9.7.

10:24:35   5        So, your Honor, the other basis of FMC's

10:24:39   6   resistance to our motion is section 9.7(d).  9.7(d) is

10:24:45   7   an exception to the arbitration provision and section

10:24:48   8   9.7(b), I think it is.  At the outset, I think it's

10:24:52   9   important to emphasize at most section 9.7(d) only

10:24:57   10  applies to one of FMC's seven causes of action.  9.7(d)

10:25:03   11  -- let me explain 9.7.  9.7 is somewhat like 4.3, an

10:25:09   12  internal dispute resolution that needs to be resolved

10:25:13   13  before a party can initiate arbitration.  I think that

10:25:16   14  has to last at least 90 days.  And 9.7(d) says, upon

10:25:22   15  breach or threatened breach of the confidentiality

10:25:24   16  provisions, you can skip that 90-day period and go

10:25:27   17  straight to seeking whatever relief it is you want to

10:25:29   18  seek.  By its own terms, it can only apply to breach of

10:25:34   19  contract claim, and it is not going to apply to the

10:25:34   20  inventorship claims.  And we don't understand FMC's

10:25:36   21  argument to be suggesting that it does apply to the

10:25:39   22  inventorship claims.  It does not work on the breach of

10:25:47   23  contract claims for reasons we laid out in our brief.

10:25:50   24  First, your Honor, there is nothing in 9.7(d) that

10:25:54   25  suggests that you can skip arbitration altogether.

                    FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:25:57   2    9.7(d) just allows you to skip that 90-day resolution

10:26:01   3    period because there is threatened irreparable harm.

10:26:04   4    You have to get relief as soon as possible.  In fact,

10:26:06   5    that is what FMC did in its initial arbitration, it

10:26:09   6    filed an arbitration demand and then it immediately

10:26:13   7    sought injunctive relief from the arbitration panel.  A

10:26:19   8    second point why 9.7(b) doesn't work FMC is not seeking

10:26:23   9    the relief that 9.7(b) authorizes.  9.7(b) allows the

10:26:29   10   moving party or the party filing the Complaint to enjoin

10:26:33   11   a threatened breach of confidentiality agreement.  So,

10:26:37   12   you know, the hypothetical example is that a party has

10:26:41   13   gotten information that it shouldn't have.  You need to

10:26:46   14   run and join that before there is irreparable harm.  FMC

10:26:50   15   is not seeking that.  The alleged breach of the

10:26:53   16   confidentiality provisions is allegedly including

10:26:56   17   information that FMC claims is confidential in a patent

10:26:59   18   application, in a patent that has since published.  That

10:27:03   19   happened --

10:27:04   20            THE COURT:  Years ago.

10:27:05   21            MR. MOORMAN:  Years ago, that happened

10:27:07   22   years.  They are not enjoining anything.  They are not

10:27:10   23   alleging that the confidentiality of the patent

10:27:13   24   agreement is causing irreparable harm.  Even if you that

10:27:20   25   9.7(d) authorizes.

FMC. CORP V. SYNGENTA CORP PROTECTION AG

THE COURT:  From your perspective, 9.7(d) gives you a ticket to get a temporary retraining order in a week's time like that.

MR. MOORMAN:  I think it's in arbitration. You can get it from the arbitration panel, we don't think 9.7(d) allows to you run to court, it allows you to run to arbitration before the 90-day expires.  And even if it lets you go to court, FMC is not seeking the relief that 9.7(d) authorizes.

Your Honor, at the outset, I said there was two independent reasons that this Court should compel arbitration.  The second is the panel doesn't need or, excuse me, I've been in arbitration too long, your Honor doesn't need to decide any of these issues because the Second Circuit precedent on this issue is clear.  When parties incorporate the AAA rules into their arbitration clause, it reflects a clear manifestation that the parties intended for the arbitration panel to decide the question of arbitrability.  There are several cases that support this proposition.  The one I think we quoted in our brief is the *Contec* case, 398 F. 3d 205.  There are several other Second Circuit cases that reach the same holding.  And it's Rule 7 of the AAA Commercial Rules that says, the arbitrators shall determine their own

1           FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:28:47    2    jurisdiction.  The Second Circuit has said when the

10:28:49    3    arbitration rules that the parties incorporate into

10:28:53    4    their agreement says something like that, the

10:28:55    5    arbitration panel should decide that issue in the first

10:28:58    6    instance.  That applies here.  That is an independent

10:29:00    7    basis why Syngenta's motion to compel arbitration should

10:29:05    8    be granted.

10:29:05    9           THE COURT:  I think I know the answer to

10:29:07    10   this.  But the remedy, if not this panel, but some panel

10:29:11    11   goes crazy, and, obviously, is off the area that they

10:29:15    12   are supposed to act, then the remedy is really post

10:29:18    13   award through some sort of attack to the confirmation

10:29:22    14   process.

10:29:22    15          MR. MOORMAN:  That is 100 percent right

10:29:24    16   exactly.  They have a legal basis to argue the

10:29:29    17   arbitration panel got it wrong.  There are remedies in

10:29:32    18   district courts to make that point and get it vacated,

10:29:35    19   as you know, if the arbitration panel goes off the

10:29:39    20   reservation.

10:29:40    21          THE COURT:  We see it with compelling

10:29:42    22   parties to arbitrate, that is a tough question and that

10:29:45    23   gets decided later after the award.

10:29:47    24          MR. MOORMAN:  Exactly right.  Alternatively,

10:29:50    25   if the panel decides it doesn't have the authority to

|  | 1 | FMC. CORP V. SYNGENTA CORP PROTECTION AG |
| 10:29:53 | 2 | arbitration, it would just kick back to Federal Court, |
| 10:29:56 | 3 | right?  There are routes back to court, but there will |
| 10:30:00 | 4 | be a route back to court. |
| 10:30:01 | 5 | So, your Honor, I want to touch briefly on |
| 10:30:03 | 6 | the topic of fees.  And at the outset, our motion for |
| 10:30:08 | 7 | fees, I want to say at the outset, Syngenta agrees that |
| 10:30:11 | 8 | request for fees are really limited to the extraordinary |
| 10:30:15 | 9 | case where there is a strong inference of bad faith on |
| 10:30:18 | 10 | the part of the party.  In your ordinary case, the |
| 10:30:21 | 11 | request for fees is determined by, I'll call it the |
| 10:30:24 | 12 | meritlessness or frivolousness of the Complaint.  It |
| 10:30:27 | 13 | lacks merits, there is no colorable argument that it |
| 10:30:30 | 14 | applies, and the Court can infer bad faith from it.  We |
| 10:30:34 | 15 | think that is the case here.  We think the basis to |
| 10:30:37 | 16 | resist arbitration is meritless.  But we have more in |
| 10:30:41 | 17 | this case.  We actually have evidence of bad faith and |
| 10:30:44 | 18 | that is reflected in the e-mail that I introduced at the |
| 10:30:49 | 19 | outset.  The week before they filed this Complaint, they |
| 10:30:52 | 20 | threatened a very public litigation, a very public |
| 10:30:55 | 21 | litigation.  And they threatened this at a time when |
| 10:30:58 | 22 | there was ongoing arbitration proceedings on the same |
| 10:31:01 | 23 | basis that Syngenta claims this claim should be |
| 10:31:05 | 24 | arbitrated, too.  This is really the extraordinary case |
| 10:31:08 | 25 | to where you don't just have the meritless case, but you |

```
                         FMC. CORP V. SYNGENTA CORP PROTECTION AG
10:31:12    2    have the direct evidence of bad faith that you rarely
10:31:16    3    ever have in a request for fees.  As a result, my client
10:31:20    4    has expended money and we're all here arguing this
10:31:23    5    motion.  And we believe our client should be given
10:31:26    6    reimbursement of the fees as a result of FMC's decision
10:31:30    7    to file this in Federal Court when it knows it shouldn't
10:31:33    8    and to force the parties to litigate this issue.
10:31:37    9               If your Honor doesn't have any questions, I
10:31:39   10    ask for the opportunity to respond to any argument that
10:31:41   11    FMC has, but I'll turn it over to FMC.
10:31:45   12               THE COURT:  Thank you very much.
10:31:57   13               MR. BUTSWINKAS:  Good morning, your Honor.
10:31:57   14    Dane Butswinkas for FMC.
10:31:57   15               THE COURT:  Can you spell the last name.
10:31:57   16               MR. BUTSWINKAS:  Sure.  B, as in boy, u, t
10:31:57   17    as in tom, s as in Sam, w, i, n, k, a as in apple, s as
10:32:23   18    in Sam.
10:32:23   19               THE COURT:  Good morning.  Thank you for
10:32:25   20    coming.
10:32:25   21               MR. BUTSWINKAS:  Let me start out by saying
10:32:28   22    thank you for having this.  It gave me my first win when
10:32:32   23    I was able to fit into my suit.  Let me start with the
10:32:36   24    easy parts of this.
10:32:37   25               There are really two routes to be in this
```

1        FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:32:40  2   court. One is through the exception to 9.7, with

10:32:44  3   respect to Count 5, the confidentiality claim. I think

10:32:47  4   that is actually pretty straight forward, and I'll end

10:32:51  5   up starting there. And then second is a little bit more

10:32:53  6   complicated, the question of 4.3. Where the contracting

10:32:59  7   parties, and I had the exact same reaction that your

10:33:01  8   Honor did, it looks like two sets of lawyers creating

10:33:05  9   two sets of frameworks to deal with two sets of claims.

10:33:08  10  And it's an easier question, probably, if we were, as

10:33:14  11  you say, were talking about this during the term of the

10:33:16  12  contract. The more complicated question is what happens

10:33:20  13  when the term ends. And I'll talk about that. I don't

10:33:26  14  think it's as easy and straight forward as the defendant

10:33:28  15  suggests. Let me start with the confidentiality claim,

10:33:35  16  which rests on the exception to 9.7. This is a

10:33:49  17  provision that I know your Honor has seen over the

10:33:51  18  years, provisions of this type, where you have an

10:33:55  19  arbitration clause and then you have a carve out for

10:34:00  20  equitable relief.

10:34:02  21          THE COURT: Right.

10:34:04  22          MR. BUTSWINKAS: And my experience with

10:34:06  23  those provisions has been those carve outs come in two

10:34:10  24  brands. One is the brand is where we're talking about

10:34:13  25  running to court for temporary relief, temporary

1         FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:34:16    2    restraining order, preliminary injunction.  Something

10:34:23    3    that is interim to preserve the status quo.  That is

10:34:27    4    brand one.  And brand two is an exception to allow you

10:34:30    5    to go to Federal Court to bypass the arbitration process

10:34:34    6    to seek a permanent merits decision, like a permanent

10:34:39    7    injunction, like specific performance or like some other

10:34:43    8    remedy crafted by pursuing party.  Your so question

10:34:46    9    here, I think, is really which brand is this.  And I

10:34:49    10   think the language of 9.7(d) answers that.  Here is what

10:34:58    11   it says.  "The dispute resolution procedure set forth in

10:35:02    12   this 9.7 is mandatory and neither party shall institute

10:35:08    13   legal proceedings," go to court, "until it has been

10:35:13    14   exhausted."  Let's talk about that sentence.  The

10:35:15    15   preceding is, not just the 90-day negotiation period,

10:35:18    16   the whole process, including the arbitration.  You've

10:35:21    17   got to exhaust that unless the exception applies, and

10:35:26    18   the exception is this.  Notwithstanding the foregoing

10:35:30    19   the exception, the parties acknowledge that any breach

10:35:33    20   of the confidential obligation, that is our Count 5 in

10:35:37    21   the Complaint, in this agreement will result in

10:35:40    22   irreparable harm, standard language that we always see,

10:35:43    23   for which the disclosing party shall not have an

10:35:46    24   adequate remedy at law and accordingly, upon a breach or

10:35:51    25   a threatened breach, so not as they just represented to

FMC. CORP V. SYNGENTA CORP PROTECTION AG

the Court, something future looking, but also a breach that already happened, like we allege here, of the confidential obligations here in the disclosing party shall be immediately entitled to pursue without showing or proving any actual damage sustained, (2) a temporary restraining order, like they talked about, preliminary injunction, like we talked about, permanent injunction or an order compelling specific enforcement or other appropriate remedies as determined by the disclosing party or to prevent the breach of such confidentiality obligation. Brand two, the carve out that allows you to go to court for a confidentiality breach to seek permanent relief. A permanent injunction, specific performance, or remedies of our choosing. Now, we seek all of those here in our claim. This one is pretty easy. Their argument is that the bypass is just the bypass of the 90-day negotiation period. That is not what it says. What it says is you have to exhaust all of those procedures, the negotiation, the management meetings, the arbitration, all of that. You have to do that first unless. Unless what? You allege a confidentiality violation for a breach or a threatened breach, and you ask for remedies, not just interim remedies, but permanent injunction, specific performance

                    FMC. CORP V. SYNGENTA CORP PROTECTION AG

or remedies crafted by the suing party.  That seems

pretty easy and straight forward.  And I don't really, I

mean, I'm probably not going to respond substantively

to, unless your Honor requires, the idea they should get

fees for this.  This is a pretty clear argument.  This

is a clear carve out, it allows you to go to court for a

confidentiality breach.  That is exactly what we allege

here, because that is exactly what happened.

                    Now, the other question is a little bit more

complicated, 4.3.  Now, what it looks like happened, and

I will say that, I will give him credit, we do agree

with a lot of what he said.  There is clearly an

arbitration clause in the agreement, no question.  There

is clearly a legion of cases that say when you have just

an arbitration clause, you out to be thinking

arbitration.  There is that.  Our contract is a little

different than that.  We also agree that all of these

claims arise out of the Collaboration Agreement.  If we

came and tried to argue something different to you, we

couldn't say it with a straight face, even with a mask

on.

                    THE COURT:  Right.

                    MR. BUTSWINKAS:  On those points, we do

agree.  The contract here is a little different than

FMC. CORP V. SYNGENTA CORP PROTECTION AG
your traditional contract in that it does have an
arbitration clause to deal with some disputes, but it
also has this separate clause, 4.3, to deal with a
specific type of dispute - patent challenges.  It's a
defined term in the agreement.  It's an Article 1, I
think section CC lays it out.  And what it does is it
says, in the first instance, the direction to the
parties is to file a patent challenge in Federal Court
or before the trademark office.  That is exactly that
language.  It's not as he says, an arbitration clause.
It's a go-to-court clause.  And so you have a contract
here that has two competing paradigms to deal with
different types of disputes.  One of which it defines
specifically in the contract.  And so when you look at
4.3, you really see two things about the intended
purpose.  No. 1, a presumption, not surprisingly, that
patent challenges will be favoring courts, unless the
defendant decides, okay, I'm fine going on arbitration
then.

THE COURT:  As the challenged party, as they
say.

MR. BUTSWINKAS:  Correct, correct.  So it
favors court, unless the defendant doesn't want the
protection and expertise of a court dealing with patent

FMC. CORP V. SYNGENTA CORP PROTECTION AG
challenges.  He turned it upside down.  It is not
arbitration, it's Federal Court or trademark, unless the
defendant wants it to arbitrate.  That is how it works.
So the first thing you see in 4.3 is the intent of the
parties to craft a provision that favors court for that
particular type of case, patent challenges.

THE COURT:  And not just any court,
Delaware.

MR. BUTSWINKAS:  Correct, correct.  And the
second thing you see in 4.3, is an intent to, during the
term, maintain the collaborative process, right?  It's a
Collaboration Agreement, if we have a dispute, let's get
together and try and work it out.  Let's get an opinion
of counsel to share why do you think what you think
about the patent challenge.  If that doesn't work out,
you're directed to file in court, as you say, in
Delaware or the trademark case.  And the way out of
that, and the way back to arbitration, the defendant
decides it wants to arbitrate instead.  And that would
not be a surprising process during the term to have
those collaborative features.  Notably 4.3 does not
cross reference 9.7 at all.  And 9.7 does not cross
reference 4.3 at all.  Nor is there any language in the
agreement that sheds any light on the question of what

| | | |
|---|---|---|
| | 1 | FMC. CORP V. SYNGENTA CORP PROTECTION AG |
| 10:41:16 | 2 | happens when the term ends.  There clearly is a |
| 10:41:23 | 3 | presumption in the agreement that patent challenges will |
| 10:41:25 | 4 | be handled by courts, not arbitrators.  And you see that |
| 10:41:29 | 5 | not only in 4.3, but in the definition of "patent |
| 10:41:33 | 6 | challenges."  The examples that are given in patent |
| 10:41:37 | 7 | challenges are two things, a court action and a |
| 10:41:39 | 8 | trademark court action.  So they are thinking about this |
| 10:41:43 | 9 | brand of dispute being handled by a court.  And, so, |
| 10:41:49 | 10 | you're left with the unenviable question what happens |
| 10:41:54 | 11 | when the term is over. |
| 10:41:55 | 12 | THE COURT:  Right. |
| 10:41:56 | 13 | MR. BUCKI:  Because during the term, kind of |
| 10:41:58 | 14 | easy.  What happens when it's over?  The result that |
| 10:42:04 | 15 | they propose is really at odds with the intent that the |
| 10:42:09 | 16 | crafters of this contract presented, namely favoring |
| 10:42:14 | 17 | courts for patent challenges.  An intent, it's only a |
| 10:42:23 | 18 | hint, it is not a tidal wave of evidence showing that |
| 10:42:26 | 19 | intent.  But it's a pretty clear hint in 4.3 and in the |
| 10:42:26 | 20 | definition of patent challenges that the people who |
| 10:42:32 | 21 | wrote the agreement favored courts for patent |
| 10:42:34 | 22 | challenges.  And not a surprising intent, frankly.  But |
| 10:42:38 | 23 | that is clear. |
| 10:42:40 | 24 | But, again, it's not an avalanche of |
| 10:42:43 | 25 | evidence.  So one wonders whether is there anything else |

FMC. CORP V. SYNGENTA CORP PROTECTION AG

out there that would shed any light on how the parties
actually thought this provision worked.  And the good
news is that there is.  The defendants propose that what
happens is you have 4.3 that directs the parties to file
in court if the collaborative process doesn't work.  And
has an exception that the defendant can use to put it
back into arbitration.  So a particular circumstance
that allows a defendant to escape mandatory court for
patent challenges.  And their argument is, when the term
ends, that suddenly that intent is all washed away, the
clear favoring of court is down the drain, and you go to
exactly the opposite where it's arbitration in all
circumstances.  That is a far cry from 4.3.  And we
argue, undermines the intent.  But the evidence out
there about how these provisions should work together or
not work together is best seen in what they've done.  On
February 21st, 2020, they instituted a patent challenge
at the Patent and Trademark Office.  On August 31, 2020
they instituted a patent challenge at the European
Patent Office.  In September of 2020, they instituted a
patent challenge at the China National Intellectual
Property Institute, the equivalent of our PTO.  All of
these are unmistakably and indisputably patent
challenges as crafted in Article 1 of the agreement, no

FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:44:38  2  doubt about it.  All of them happened after the term,

10:44:46  3  May 31st, 2018 of the contract expired.  And all at are

10:44:49  4  at odds with the interpretation of the contract they

10:44:53  5  present to your Honor today.  Because if they are right,

10:44:55  6  when 4.3 expired and they filed patent challenges, which

10:45:00  7  they spent a long time from the podium today, you get a

10:45:04  8  judgment, and you go to court, he is right about that,

10:45:07  9  by the way, all three of these would be in arbitration.

10:45:10  10  9.7 would govern, and they would have had to go through

10:45:13  11  that procedure, and it survived the end of the contract,

10:45:18  12  and all three of those would be in arbitration.  What

10:45:23  13  does that tell you?  It tells you they don't really

10:45:26  14  think that is how it worked.

10:45:27  15      THE COURT:  Neither side can be accused of a

10:45:32  16  great deal of consistency.

10:45:35  17      MR. BUTSWINKAS:  Right.  Foolish thinkers

10:45:38  18  can (inaudible) of small minds.  I guess what I would

10:45:40  19  say, when they sweep 4.3 to favor courts, to jump to 9.7

10:45:46  20  and do the opposite for all time, you'd need some

10:45:49  21  language in the contract that would suggest that you

10:45:51  22  should do that.  You would see a cross reference in 4.3

10:45:54  23  or see a cross reference in 9.7 or you would see

10:45:58  24  something somewhere that says when 4.3 runs out, back to

10:46:03  25  the general arbitration clause.  You don't see any of

FMC. CORP V. SYNGENTA CORP PROTECTION AG

that.  And so you're forced, your Honor, with all due

respect, to put together tea leaves.  And what do you

have?  Some intent that is gleaned from 4.3 that favors

courts, and you have some intent that can be gleaned

from Article 1 CC that refers only to court.  And you

have their conduct, which gives you three examples where

what they did is exactly consistent with what, how we're

saying the contract works.

And I don't think there is much dispute, but

I'll cover it for a minute with respect to claims one

through four, whether they are patent challenges or not.

They are quintessential patent challenges.  They

challenge the owner of the patent, who the inventors

are.  I don't think there is any debate about that.  I

also don't think there is any debate about whether the

three patent challenges they institute meet the

definition of 1.1 CC.  I don't think there is any debate

about that.  And I don't think there is any debate about

the types of proceedings that are given as examples in

the definition of patent challenges, mainly only court,

only Patent and Trademark Office, no reference to

arbitration at all.

Now, their contention, and I think there is

some confusion because these parties have been at each

```
 1            FMC. CORP V. SYNGENTA CORP PROTECTION AG
 2   other.  I have not been involved, but at each other for
 3   a long time on a lot of different fronts all around the
 4   world.
 5            THE COURT:  Right.
 6            MR. BUTSWINKAS:  But make no mistake about
 7   that.  They say these claims that we're bringing here
 8   are either covered or almost covered in that
 9   arbitration.  And that is not so.  I am involved in that
10   arbitration now.  And so I know what those claims are
11   and those are really a contract dispute over
12   commercialization rights.  There is no confidentiality
13   claim.  There are no patent claims.  In fact, it's not
14   even possible to have brought these claims in that
15   context because we didn't -- we, FMC, didn't even know
16   about them until after discovery had closed in that
17   arbitration, and, literally, on the eve of the
18   evidentiary hearing.  And as we proceed from here to a
19   final evidentiary hearing in January, just in a few
20   months, it's all about crafting the terms of a license
21   agreement.  It's not going to decide anything about
22   patent rights or decide any of the claims that we have
23   in our Complaint.
24            THE COURT:  Can I take you to sort of a
25   strategic question.  One, it's a little hard to see why
```

FMC. CORP V. SYNGENTA CORP PROTECTION AG

what you want to do, I guess, you want to go forward in this court in the conventional way and get a discovery order in place and start taking deposition, you know, the normal drill that lasts 24 months or something like that.

MR. BUTSWINKAS:  Yes.

THE COURT:  Did you want me to stay the arbitration or you want to proceed with it?

MR. BUTSWINKAS:  No, the arbitration is completely different issues.  It's not going to affect what happens here.

THE COURT:  How about we wait and find out what they do?  In other words, you're going to lose in this court, you shall four, five, six months, you should get a decision in April or May, and then we will know, you don't have to guess.

MR. BUTSWINKAS:  Not a crazy idea, your Honor.  Let me try and convince you that you don't need to wait that long.  A couple things happened in this arbitration that we're talking about that I think really clearly answers this question of whether there is some sneaky overlap and we're trying to escape that proceeding to get a new one, because that is not the case, but I get the argument.  There was discovery that

FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:49:54   2   we sought at the very beginning of the case because, as

10:49:57   3   lawyers do, they come in and they want broad discovery,

10:50:01   4   even in an arbitration, which used to be marketed as the

10:50:06   5   cheaper way to a decision, no longer.

10:50:08   6          THE COURT:  Quicker they get that.

10:50:10   7          MR. BUTSWINKAS:  Not much quicker.  We asked

10:50:13   8   for discovery, the prior lawyers, and what they asked

10:50:16   9   for were the Syngenta patent applications.  And

10:50:20   10  documents related to their patents, which would have

10:50:23   11  included the very patents that are at issue here.  And

10:50:29   12  the response to that from the lawyers that represented

10:50:32   13  Syngenta was that any patents filed by Syngenta are

10:50:40   14  irrelevant to FMC's claims because FMC's demand does not

10:50:46   15  allege that Syngenta breached the Collaboration

10:50:50   16  Agreement by preparing or filing patents.  In other

10:50:52   17  words, exactly the claims we have here.  They said we

10:50:55   18  shouldn't give the documents because those claims are

10:50:58   19  not in that arbitration, and in fact, they go on and

10:51:00   20  say, this is the response to our document request, they

10:51:03   21  go on to say, "no allegations relate to Syngenta's

10:51:06   22  patents."  And the panel agreed with them.  And it

10:51:13   23  ordered no discovery of that information finding that

10:51:18   24  Syngenta had responded that its patents or patents

10:51:23   25  applications are not relevant to FMC's demand.  And it

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:51:28   2   concluded and it says in their order, the panel finds

10:51:29   3   that none of the claims asserted by FMC against Syngenta

10:51:33   4   alleged that Syngenta breached the Collaboration

10:51:36   5   Agreement by filing its own patent allegations.  And so

10:51:40   6   when we tried to seek --

10:51:41   7          THE COURT:  That is in the -- I'm sorry.

10:51:44   8   That is in the interim award.

10:51:50   9          MR. BUTSWINKAS:  Your Honor, let me present

10:51:52  10   copies to everybody.

10:51:55  11          THE COURT:  Sure.

10:52:03  12          MR. BUTSWINKAS:  Well, Judge, unfortunately,

10:52:04  13   I only have one copy.  I'll give that to you, and I'll

10:52:08  14   give them my copy when I'm done.  May I approach?

10:52:08  15          THE COURT:  Sure.

10:52:11  16          MR. BUTSWINKAS:  This is the letter I

10:52:16  17   referred to, and this is the discovery order.

10:52:20  18          THE COURT:  Okay.  This is one I haven't

10:52:22  19   seen.  All I've seen is the big interim award.

10:52:26  20          MR. BUTSWINKAS:  Yes, it's not in the

10:52:27  21   interim award, correct.

10:52:30  22          THE COURT:  And you guys have a copy of it?

10:52:32  23   You've seen this before?

10:52:36  24          MR. BUCKI:  We have seen it before because

10:52:38  25   we litigated the case.

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:52:40  2          MR. MOORMAN:  If it's the interim award that

10:52:43  3  we --

10:52:43  4          THE COURT:  It is order No. 4, moving on

10:52:46  5  letter briefs regarding discovery disputes.

10:52:48  6          MR. MOORMAN:  I am sure we have seen it

10:52:48  7  before.  It's find if Mr. Butswinkas wants to give us

10:52:52  8  his copy, I trust him.

10:52:54  9          MR. BUTSWINKAS:  I'll give you mine complete

10:52:56  10  with highlighting.  I apologize for not having copies.

10:52:58  11          MR. MOORMAN:  I appreciate that.

10:53:00  12          MR. BUTSWINKAS:  I think that these

10:53:01  13  documents add to what we already said about this.  It

10:53:04  14  makes clear that everybody's position was that

10:53:08  15  Syngenta's patent filings were not at issue in the

10:53:12  16  arbitration and that is how they fought discovery.  The

10:53:15  17  panel agreed with them because the panel said those are

10:53:18  18  not at issue here.  The relief that is pending has

10:53:21  19  nothing to do with the inventorship of these patents,

10:53:24  20  which are counts one through four, and has nothing to do

10:53:27  21  with the confidentiality issue, which is Count 5.  And I

10:53:33  22  don't think that they can stand here at the podium and

10:53:35  23  say that it is conceivable that in January, when we have

10:53:41  24  our hearing, and then they take the time that they take

10:53:44  25  to issue the decision.  It's not, I'll represent to the

FMC. CORP V. SYNGENTA CORP PROTECTION AG

Court, in my mind, and I invite them to say to the
contrary, it's not conceivable that they will find that
these patents are missing inventors.  That is Count 1
through 4 of our claim.  And it's not conceivable that
they will say there is a breach of confidentiality by
filing that information in their patents.  Those are not
claims before the tribunal.  And if they thought that,
by the way, why would they have run out and filed
another arbitration and then asked for it to be stayed.
If they truly thought that was the relief that was
already at issue that was coming down the pike in
January, you would think that there would be no need to
have gone out and filed an arbitration that mirrored
what we filed here.  No need.  In fact, what you would
have done is you would have gone to that tribunal and
say, hey, these guys have filed a case in Federal Court
and it's covering all of our claims, and we need to fix
that.  They haven't done that.  They put the tribunal on
notice and just let it sit.  And they would have raised
a fit about it and made sure that the panel said
something that they could bring to your Honor, but they
haven't done that.  And that is pretty telling.

          THE COURT:  I don't understand what you lose
other than a couple of months by waiting for the panel's

1    FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:55:05    2  ruling.  My experience with significant arbitrations

10:55:09    3  like this one is, however I rule on the arbitration

10:55:12    4  issue, the unhappy party will take an immediate appeal

10:55:17    5  and go right to the Second Circuit.  This thing is not

10:55:20    6  going to be, if you're all correct on everything you

10:55:23    7  say, you're really not going to be on tract and sort of

10:55:26    8  moving down the litigation from a year from now.

10:55:33    9        MR. BUTSWINKAS:  It's hard to argue.  We

10:55:36   10  loose a little bit expediency and I'd like to list out

10:55:41   11  10 arguments that why that is not a good thing to do.  I

10:55:44   12  think it's clear from the record and the order, but if

10:55:48   13  you don't see that, what you're suggesting is a very

10:55:51   14  reasonable course.

10:55:51   15        THE COURT:  Thanks.  That probably takes us

10:55:54   16  to the question of who decides arbitrability.

10:55:57   17        MR. BUTSWINKAS:  We ended at the same spot,

10:55:59   18  and I'll touch upon that now.  They came to you to ask

10:56:05   19  you to decide this question with their motion to

10:56:10   20  dismiss.  And they didn't raise, when they came to as

10:56:14   21  you this question, the idea of sending this to the

10:56:17   22  arbitration panel.  They didn't raise that until the

10:56:20   23  reply brief.  And there is case law that says that

10:56:28   24  waives that argument.  And they cite a bunch of cases

10:56:32   25  that say when an arbitration clause is kind of the heart

FMC. CORP V. SYNGENTA CORP PROTECTION AG
of a contract that is sort of tells people, you know
what, the red flag here when you have a dispute.  Then
you go to the panel or a panel or an arbitrator and get
them to figure out whether something is out or not.
This is a little different.  And I agree with the case,
we're not going to go to the cases one by one.  It's
boiler plate.  It reminded me when I was a young
associate and I would do a summary judgment and cite 50
cases that say if there is no dispute of material fact,
there is no issue here.  Here we have two different
clauses dealing with two different types of disputes.
You have the arbitration clause on one hand, and another
clause that speaks to a specific type of dispute, patent
challenges.  One favors arbitration, and one favors
courts.  That is very different than the string cite of
cases that only have one clause.  And in that world
where they've come and asked the Court to decide, and
when you do have a contract that has competing
provisions, those boiler plate cases don't look so good
anymore.  Because it looks like what you've been asked
to do is figure out the answer when you have competing
clauses in the same contract.  And that is what you have
here.  And so that is basically my answer to that is
where you have a contract, and I have a case, because

```
1              FMC. CORP V. SYNGENTA CORP PROTECTION AG
10:58:03   2   there is not a case that is on all fours with this
10:58:06   3   situation.  There are ton of cases where contracts,
10:58:10   4   single arbitration clause, send it to the panel, right?
10:58:14   5   That is not this.
10:58:15   6              THE COURT:  Right.
10:58:16   7              MR. BUTSWINKAS:  You have two different
10:58:18   8   clauses that deal with different types of disputes, very
10:58:21   9   differently.  One with arbitration, one favoring courts.
10:58:25  10   That is a role the courts should decide and not send it
10:58:28  11   to the panel.  Your Honor, unless you have any other
10:58:30  12   questions.
10:58:31  13              THE COURT:  No, it was very helpful.  You
10:58:33  14   didn't lose your step during your 18 months of Covid
10:58:39  15   quarentine.
10:58:39  16              MR. BUTSWINKAS:  I did loose a little button
10:58:41  17   this morning, but, thank you.
10:58:42  18              THE COURT:  Thank you.  Glad to have you
10:58:43  19   back.  All right.  Mr. Moorman, I'll go to you.
10:58:59  20              MR. MOORMAN:  I want to go to a few points
10:59:02  21   that FMC raised.  I want to go to the question that your
10:59:06  22   Honor left off with, the question of whether this claim
10:59:09  23   is arbitrable.  I think it very important to show that
10:59:14  24   FMC expressly agrees with our cases.  Those cases
10:59:18  25   squarely hold that if the arbitration incorporates the
```

FMC. CORP V. SYNGENTA CORP PROTECTION AG

10:59:21   AAA rules, then the arbitration panel has to decide

10:59:24   whether there is jurisdiction for an arbitration panel

10:59:25   to resolve the case.  I'm not sure I fully follow the

10:59:29   argument that there is two separate clauses or this

10:59:33   somehow undermines these cases.  They admit they don't

10:59:37   have a case that suggests that.  It's whether the

10:59:42   agreement reflects the agreement to arbitrate.  And the

10:59:46   basis of our argument is 9.7 authorizes resolution of

10:59:48   this dispute in arbitration.  Because that clause

10:59:51   incorporates the AAA rules, the arbitration panel

10:59:55   decides that in the first instance.  Now, they are going

10:59:58   to be free to make all of the arguments that they made

11:00:00   before your Honor that 4.3 is some special silent carve

11:00:05   out of 9.7, that our argument before the panel, which

11:00:09   will be 9.7 requires this case to be arbitrated, they'll

11:00:13   be able to make the arguments that 4.3 actually shows

11:00:17   9.7 doesn't allow that, and it has to be made to the

11:00:20   arbitration panel and that resolves the issue, your

11:00:23   Honor.

11:00:25           I want to, I guess I'm going to go in

11:00:28   reverse order, perhaps, because that is freshest in my

11:00:32   mind.  There was a lot of focus by FMC on whether the

11:00:38   causes of action pled in the arbitration, there are

11:00:43   actually two arbitrations, right?  Whether the causes of

FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:00:45   action were pled in the main arbitration we've been

11:00:48   talking about.  And the suggestion FMC was making is if

11:00:53   the causes of action were not pled in that arbitration,

11:00:56   then these cases can be decided in Federal Court and not

11:00:59   in arbitration.  That is not the reason we're citing the

11:01:02   arbitrations that FMC initiated.  It's not our argument

11:01:06   that FMC has brought the exact same causes of action in

11:01:11   both disputes.  It's not that FMC is going to have its

11:01:16   claims that it brings here resolved by the arbitration.

11:01:24   Those are not the arguments we are making.  The point

11:01:25   we're making, FMC's initiation of arbitration.  They

11:01:29   filed an arbitration seeking assignment of patent

11:01:34   rights.  They argued to that arbitration panel as they

11:01:35   argued in their Complaint that they are entitled to

11:01:37   ownership over Syngenta's patents.  The point is not

11:01:40   that the panel is going to decide the issues before your

11:01:43   Honor in this Complaint.  The point is it supports, it

11:01:47   shows that FMC knows these claims are arbitrable, not

11:01:51   that they are necessarily going to be resolved.  So,

11:01:54   your Honor, you're correct, what we're seeking is to

11:02:00   stay proceedings and see if arbitration will resolve

11:02:03   this.  It's not the case that the big arbitration we're

11:02:07   referring to will be the arbitration that resolves it.

11:02:11   We filed arbitration on the same day we filed our motion

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:02:14   2   to dismiss actually that asked a court issue a

11:02:14   3   declaratory judgment that resolve all of FMC's claims,

11:02:18   4   right?  And so when you stay the proceedings, as we

11:02:22   5   request, both arbitrations will play out, the

11:02:25   6   arbitration that we filed will resolve whether it has

11:02:29   7   jurisdiction to decide those claims.  And if it doesn't,

11:02:34   8   we'll be back in a couple of months.

11:02:36   9          THE COURT:  I'm a little turned around this

11:02:37   10  is new or not in the papers.

11:02:39   11          MR. MOORMAN:  It's in the papers.

11:02:40   12          THE COURT:  There are two panels.

11:02:42   13          MR. MOORMAN:  It wasn't clear coming across.

11:02:44   14  The papers, as parties often do, when there is a

11:02:47   15  Complaint filed.

11:02:47   16          THE COURT:  Right.

11:02:48   17          MR. MOORMAN:  That the defendant claims was

11:02:51   18  arbitrable.

11:02:51   19          THE COURT:  Right.

11:02:52   20          MR. MOORMAN:  We filed, basically, the flip

11:02:54   21  side of FMC's claims in the AAA.

11:02:58   22          THE COURT:  Before the same panel?

11:03:01   23          MR. MOORMAN:  It might end up.  It hasn't

11:03:04   24  been assigned a panel yet.  That is an open question of

11:03:08   25  whether it will go before the same panel or not.  Not

FMC. CORP V. SYNGENTA CORP PROTECTION AG

clear.  Also not clear whether there will be collateral

estoppel issues before the existing panel.  All of that

is unclear.

THE COURT:  Okay.

MR. MOORMAN:  We have the existing pending

arbitration that we have been referencing.  And we also

have the arbitration demand that we filed that seeks the

flip side and seeks a declaration that the inventors are

correct.  And it seeks a declaration that we didn't

breach the contract.  We've invoked Section 9.7 as the

basis of the AAA's authority to resolve that case.  That

question will be resolved, right?  So, your Honor, our

request is to stay this proceeding, as you've suggested

you can, that panel will then resolve whether it has

jurisdiction over the exact same claims FMC has brought

here.  FMC's filed counterclaims in that case that

mirrored the Complaints that it filed there.  If that

panel has authority, it will resolve the claim.  If it

doesn't have authority, it will kick it back here.  I

don't want your Honor to be under misapprehension about

our claims.  Whether these claims are arbitrable does

not turn on whether the final award in the arbitration

we have been discussing will resolve the causes of

action that FMC brings here.

1      FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:04:22   2      THE COURT:  Okay.  Does AAA have sort of

11:04:27   3   consolidation process like the Courts?

11:04:30   4      It's kind of crazy to get six people working

11:04:34   5   on this.

11:04:35   6      MR. MOORMAN:  We agree, your Honor.  It's

11:04:36   7   obviously, one of the challenges is there is just no

11:04:40   8   civil -- the commercial rules are much less detailed.

11:04:43   9   We certainly make the request, right, but it just --

11:04:47  10   they haven't resolved that yet.  We agree it would be

11:04:50  11   crazy to have six people, especially given the

11:04:55  12   familiarity and overlap between the two matters.

11:04:58  13      THE COURT:  Right.

11:04:58  14      MR. MOORMAN:  So just a few more points,

11:05:00  15   your Honor.  I think that in arguing that 4.3 prevents

11:05:08  16   us from arbitrating these claims from being arbitrated.

11:05:12  17   I think FMC gets the analysis slightly backwards.  The

11:05:18  18   starting point is whether the arbitration clause in the

11:05:21  19   agreement is broad or narrow, right?  That is what the

11:05:23  20   Second Circuit precedent says.  9.7 they don't contend

11:05:28  21   or don't dispute is a broad arbitration.  That then

11:05:31  22   triggers the presumption of arbitrability that can only

11:05:36  23   be defeated if the side that is resisting arbitration

11:05:39  24   can show with positive assurance that the parties did

11:05:42  25   not intend to arbitrate their claims.  Based on the

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:05:45   2    argument FMC has made this morning, I think they

11:05:49   3    effectively conceded they can't, or implicitly admitted

11:05:52   4    they can't show with positive assurance.  I heard

11:05:55   5    counsel for FMC saying 4.3 sheds very little light on

11:06:00   6    what the parties' intent was.  There is not an avalanche

11:06:04   7    of evidence.  That is the very opposite of positive

11:06:07   8    assurance that they need to show to overcome that

11:06:11   9    presumption everyone agrees a clause like the

11:06:15   10   arbitration clause in 9.7 establishes.

11:06:18   11          And one more point to follow up on that.

11:06:20   12   There has been some suggestion what would have happened

11:06:23   13   during the term.  I think your Honor is correct, we're

11:06:26   14   not during the term, so 4.3 does not have an

11:06:30   15   application.  There is no favoring of court under 4.3.

11:06:34   16   Rather, the challenging party gets to decide which forum

11:06:37   17   the dispute is resolved in.  If this exact same thing

11:06:42   18   happens during the term of the agreement, we might

11:06:44   19   compel arbitration.  And 4.3 allows us to.  So we're

11:06:49   20   still in arbitration, even if we're during the term of

11:06:54   21   agreement.  And that is the point I made on my opening

11:06:56   22   argument here.  4.3 reinforces, it doesn't undermine 9.7

11:07:02   23   broad arbitration clause.  It reinforces that a party

11:07:05   24   can arbitrate its claims if it wants to.

11:07:08   25          THE COURT:  At least one side can.

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:07:09   2          MR. MOORMAN:  You're right.

11:07:11   3          THE COURT:  One sidedness is peculiar.

11:07:14   4          MR. MOORMAN:  It gives the challenged party

11:07:16   5   the exclusive right.

11:07:17   6          THE COURT:  Functional Plaintiff is stuck

11:07:19   7   with court.

11:07:20   8          MR. MOORMAN:  You're right, your Honor.

11:07:21   9          THE COURT:  Unless the functional Defendant

11:07:23   10  decides to arbitrate.

11:07:25   11         MR. MOORMAN:  You're right, your Honor.  You

11:07:27   12  have that exactly right.  I want to touch 9.7(d), I

11:07:31   13  believe it is, the exception for breach of

11:07:33   14  confidentiality provisions.  As I understand the

11:07:38   15  argument FMC is making, all that a Plaintiff would need

11:07:44   16  to do to defeat the obligation to arbitrate its claims

11:07:49   17  is to plead a breach of contract and to ask for specific

11:07:52   18  performance or any other remedy it wants in the

11:07:55   19  contract.  If that were in the actual rule, if that was

11:07:59   20  the actual exception, that would swallow the rule.  You

11:08:02   21  could never arbitrate a claim because you could always

11:08:05   22  have some sort of breach of confidentiality claim and

11:08:08   23  you could always include in your prayer for relief some

11:08:12   24  sort of specific performance to abide by the contract or

11:08:16   25  whatever.  What you didn't hear from FMC, that they

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:08:19    2    actually have any risk of irreparable harm or that they

11:08:22    3    actually pled or are requesting a permanent injunction

11:08:26    4    related to the alleged breach of the confidentiality

11:08:29    5    provisions.  All of the injunctive equitable relief they

11:08:33    6    request in their prayer for relief in the Complaint

11:08:38    7    relate to their other counts to which Section 9.7 does

11:08:41    8    not apply.  So unless your Honor has any other

11:08:42    9    questions.

11:08:42   10          THE COURT:  I thought about that.  And I'll

11:08:44   11    give you a chance, too, the permanent relief -- that is

11:08:48   12    really a better question for your friend -- but the

11:08:52   13    permanent relief on the confidentiality agreement, what

11:08:56   14    is the right -- the horse is out of the barn, right,

11:08:59   15    because the material has been filed, it's not going to

11:09:01   16    be un-filed in these various IP patent regulatory

11:09:07   17    agencies.

11:09:08   18          MR. MOORMAN:  That's exactly right, you

11:09:10   19    can't un-ring the bell.

11:09:12   20          THE COURT:  Right.

11:09:13   21          MR. MOORMAN:  It also lays bear this is not

11:09:15   22    an irreparable harm case.  The patents were filed a long

11:09:19   23    time ago.  And the patent was published a long time ago.

11:09:22   24    And it's not like the patents were filed a long time,

11:09:25   25    the patent is filed legally.  There is no un-ringing of

                      FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:09:27   2  the bell and no injunctive relief that can prevent the

11:09:31   3  alleged harm here.

11:09:33   4          THE COURT:  Okay.  Thank you.

11:09:34   5          MR. MOORMAN:  Thank you, your Honor.

11:09:40   6          MR. BUTSWINKAS:  Thank you, your Honor.

11:09:42   7  Your Honor, I did say there wasn't an avalanche.  I said

11:09:47   8  there was a hint in 4.3 and hint in 1.1CC, the

11:09:56   9  definition of patent challenge, that the agreement with

11:09:58  10  respect to these types of disputes favored courts.

11:10:04  11  There is not hint any other direction.  What I also said

11:10:04  12  was there are three cases out there that fit the bill

11:10:07  13  for what the parties thought the agreement meant when

11:10:11  14  4.3 expired and that is the three cases.

11:10:15  15          THE COURT:  Brought by Syngenta.

11:10:16  16          MR. BUTSWINKAS:  Right, every one of them.

11:10:18  17  And they still haven't said a word about that.  They

11:10:21  18  haven't said a word about that.  So, what they really

11:10:24  19  ask for you to do is set one rule for Syngenta, and they

11:10:28  20  can go to court and institute patent challenges without

11:10:31  21  regard for this agreement.  And one rule for FMC, that

11:10:37  22  if they institute a patent challenge, they have to the

11:10:43  23  arbitrate it.  While you're right, not everyone is

11:10:46  24  consistent in the world, that pattern and practice does

11:10:50  25  shed light on what they thought the agreement meant.

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:10:53  2   That is point one.

11:10:53  3          THE COURT:  The practice in this case seems

11:10:55  4   to be that both sides assumed for themselves the right

11:10:58  5   to sue and to demand arbitration freely at the same time

11:11:02  6   and then leave it to the court to sort of be a traffic

11:11:05  7   cop and say, yes, to this one, no, to that one.  You

11:11:09  8   haven't come here seeking to -- I don't know quite what

11:11:14  9   the body would be.  You haven't come here seeking to

11:11:19  10  stop these three regulatory administrative challenges.

11:11:22  11         MR. BUTSWINKAS:  That is a fair question.

11:11:23  12  But it is a question, we do come here seeking a traffic

11:11:25  13  cop.  But it is not a road without lanes.  And the

11:11:30  14  contract gives lanes.  One lane is patent challenges.

11:11:33  15  And one lane is disputes that arise under the contract

11:11:36  16  that are not patent challenges.  So there are clear

11:11:39  17  lanes.  The second point I wanted to make was, unless,

11:11:44  18  because of the masks I'm not hearing them correctly,

11:11:47  19  basically gave up the argument that the existent

11:11:53  20  arbitration that has been going on for some time that

11:11:56  21  has these hearings in January, are adjudicating the same

11:11:59  22  issues.  He said that is not our argument, that was

11:12:02  23  their argument, he said that is not the argument

11:12:04  24  anymore.  All we're saying that you can take claims like

11:12:07  25  these and arbitrate them.  Well, when we tried to get

FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:12:15  2  discovery on claims like these in that very arbitration,

11:12:18  3  they said they are irrelevant to what we're arguing

11:12:21  4  about.  And the panel said, no discovery because no

11:12:24  5  Syngenta patents are at issue.  That, I think, answered

11:12:27  6  the question pretty clearly, your Honor's, question, why

11:12:30  7  not wait until January.  And I think he all but conceded

11:12:33  8  that you can wait until January, and you're not going to

11:12:36  9  get any result that encroaches on what we're seeking

11:12:43  10  here.  And so that question I think has been answered.

11:12:46  11      THE COURT:  And what I'm a little

11:12:48  12  embarrassed to have missed the reference to the new

11:12:52  13  arbitration proceeding, I did.  So, from your

11:12:53  14  perspective, that is just a new, where does that fit

11:12:56  15  into our universe of claims?

11:13:00  16      MR. BUTSWINKAS:  Yes.  It was a little

11:13:02  17  confusing, I think, from both of us.  The second

11:13:04  18  arbitration that he is talking about is not some active

11:13:07  19  of arbitration that has been going on on some other

11:13:10  20  issues.  It's an arbitration that they filed in response

11:13:13  21  to our Complaint.

11:13:14  22      THE COURT:  Right.

11:13:15  23      MR. BUTSWINKAS:  The mirror image of our

11:13:17  24  Complaint.  And then they went to the AAA and said,

11:13:19  25  please stay that while the Court decides whether it

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:13:23   2    should be arbitrated or not.

11:13:26   3               THE COURT:  Okay.

11:13:27   4               MR. BUTSWINKAS:  So it really doesn't have

11:13:29   5    anything to do with, now they are trying to convert your

11:13:32   6    question into, stay this, and let that second

11:13:37   7    arbitration proceed.  That begs the question of whether

11:13:39   8    we should be here or there.  Is that helpful?

11:13:43   9               THE COURT:  Yes, that is.  I feel a little

11:13:46   10   better if all I overlooked was a demand for arbitration,

11:13:51   11   that is not as bad overlooking an entire case.

11:13:54   12               MR. BUTSWINKAS:  Yes, exactly.  The

11:14:01   13   contention that the contract has a broad arbitration

11:14:04   14   clause, and, therefore, see legion of cases.  They don't

11:14:08   15   answer the argument.  That it's a different type of

11:14:11   16   contract that has two different clauses dealing with

11:14:14   17   very distinct types of disputes.  And if you want to

11:14:18   18   play the, what's broad and what's narrow, if you look at

11:14:21   19   4.3, it's a pretty narrow arbitration clause, because it

11:14:25   20   presumes Federal Court or the trademark office, unless

11:14:31   21   that one instance, that one cited instance where the

11:14:34   22   defendant decides it wants to arbitrate.  So if we want

11:14:37   23   to play broad or narrow, then both clauses have to come

11:14:41   24   into play and we're talking about patent challenges.

11:14:44   25   That the most light will be shed on patent challenges by

1       FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:14:49  2  looking at 4.3, which specifically addresses patent

11:14:54  3  challenges.  9.7 doesn't say boo about patent

11:14:58  4  challenges.  Doesn't reference 4.3.  It doesn't use the

11:14:59  5  word "patent challenge," it does not touch upon it at

11:15:01  6  all.  Again, it's not a world where we have a stock

11:15:04  7  contract that someone pulled off the shelf and they

11:15:06  8  stuck an arbitration clause in there.  That is what the

11:15:09  9  cases are about, and I don't dispute that.

11:15:12 10       THE COURT:  What does it mean to you, this

11:15:14 11  sort of philosophical question about what happens to

11:15:22 12  words after the term expires.  From your perspective,

11:15:27 13  the expiration of 4.3, I should overlook it because it

11:15:32 14  sort of lingers in the room in a luminous way giving

11:15:36 15  guidance, even though it's deceased.

11:15:38 16       MR. BUTSWINKAS:  That is a great question.

11:15:39 17  And what the Court has to decide is what was the intent

11:15:42 18  of the parties with respect to patent challenges after

11:15:46 19  the term.

11:15:48 20       THE COURT:  Right.

11:15:49 21       MR. BUTSWINKAS:  Right.  And so one is the

11:15:51 22  language of the agreement, right?  And so is there any

11:15:55 23  language in the agreement that says when 4.3 is over,

11:15:59 24  you go back to 9.7?  In other words, instead of the

11:16:04 25  presumption of courts, now you do the opposite.  You

FMC. CORP V. SYNGENTA CORP PROTECTION AG

presume and only presume arbitration.  There is no

language in 4.3, 9.7, in 1.1, anywhere in the contract

that would have you do so dramatic that would have you

turn what the parties intended in the first instance on

its head.  And so with all due respect, your job is to

divide the intent of the parties with respect to what

happened when the term ran out.  And there are a couple

of good things that I think guide the Court on that.

One is the clear presumption that patent challenges were

to be decided by court, not arbitration.  There is no

where in the agreement that creates an argument for a

presumption of arbitration of patent challenges.  There

is a choice by a defendant in 4.3 during the term, but

that is it.  The clear presumption in the agreement

favors courts for patent challenges, and nothing in 9.7

says anything to the contrary.

THE COURT:  But if I could pick with you a

little bit.  You're sort of taking the parts you like,

but not the parts you don't like.  You sued in the

Western District, but if 4.3 lingers on in some sort of

ghostly way, maybe you should have sued in Delaware.

Some parts disappear, and other parts are still here.

MR. BUTSWINKAS:  It's a very decent point,

your Honor, and our argument.  I guess the way 4.3

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:17:40   2   lingers is what it shows about the party's intent.  And

11:17:44   3   one thing is clear, I think that they favored courts.

11:17:49   4   Now, your point may be well taken and we thought about

11:17:53   5   that point as we were filing.

11:17:55   6          THE COURT:  Yeah.

11:17:55   7          MR. BUTSWINKAS:  And so the thing that cut

11:17:58   8   against that point was the consent to jurisdiction was

11:18:03   9   in New York.  And when we filed here, because we have a

11:18:08   10  plant here, and we have a location here.

11:18:12   11         THE COURT:  Is that what it is?

11:18:14   12         MR. BUTSWINKAS:  Yes, sir.  And so whether

11:18:16   13  every single word of 4.3 lingers in a way that effects

11:18:21   14  materially, the intended point we're making is a really

11:18:24   15  good question at some point, where the Court would have

11:18:26   16  to draw the line and whether it would mean Delaware in

11:18:30   17  the Patent and Trademark Office or not, that is a little

11:18:34   18  fuzzier to me.  But what is clear is favor courts.  And

11:18:38   19  the arbitration component of 4.3, narrow not broad.  So

11:18:43   20  if you want to take the same boiler plate cases and

11:18:47   21  apply them, and look at 4.3, you'll come out very

11:18:51   22  differently than the Defendants are suggesting.

11:18:53   23         And the last thing I would say, and I

11:18:55   24  appreciate the Court indulging me, I think he argued

11:18:59   25  that with respect to our breach of confidentiality

```
             1           FMC. CORP V. SYNGENTA CORP PROTECTION AG
11:19:04     2    claim, Count 5, that you can't allow us to do that
11:19:08     3    because anybody could just circumvent the arbitration
11:19:11     4    clause with any type of breach of contract claim of any
11:19:15     5    kind or any claim of specific performance. That is just
11:19:20     6    dead wrong. It has to be a breach of confidentiality.
11:19:24     7    That is not the carve out. The carve out is the breach
11:19:26     8    of confidentiality. The relief is the types of things
11:19:29     9    you can go to a court and ask for. And they are all not
11:19:32    10    surprisingly of the nature and equity. They are all
11:19:37    11    equitable relief. And sometimes those clauses are
11:19:41    12    limited to in and around temporary status quo relief and
11:19:45    13    sometimes they are not. Here they are not. Permanent
11:19:48    14    injunction, specific performance, and remedies crafted
11:19:55    15    by the suing party.
11:19:55    16           THE COURT: What permanent injunction do you
11:19:58    17    want? I think you want money. I don't think you want
11:20:00    18    the Court to say what happened to the release of this
11:20:05    19    information was very wrong and we're sorry it happened
11:20:08    20    and that is as much as we can say.
11:20:10    21           MR. BUTSWINKAS: We only ask for the
11:20:12    22    equitable remedies on two levels. One with respect to
11:20:15    23    the filings that have already happened. We think the
11:20:18    24    patents will be reassigned to us because of the
11:20:21    25    misconduct in the prosecution of the patent. So that is
```

1              FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:20:25   2   an equitable specific enforcement remedy.

11:20:28   3              THE COURT:  I get your point.  Thank you.

11:20:30   4              MR. BUTSWINKAS:  And second, this is the

11:20:31   5   point they missed, they are in the process of filing

11:20:33   6   these patents around the world.  There are more to come

11:20:36   7   and we would get preventative permanent injunction.

11:20:43   8              THE COURT:  For other countries.

11:20:44   9              MR. BUTSWINKAS:  Yes.  And, your Honor,

11:20:45   10  unless you have other questions, thank you so much.

11:20:48   11             THE COURT:  No, no, no.  Thank you.

11:20:50   12             MR. MOORMAN:  Your Honor, if I could.

11:20:56   13             THE COURT:  You've come a long way.  It is a

11:20:58   14  pleasure to talk to both of you.  Let me start with

11:20:59   15  picking on you about why as the advocate of arbitration,

11:21:05   16  why did you start in the administrative tribunal.

11:21:09   17             MR. MOORMAN:  That is exactly where I wanted

11:21:11   18  to start.  And I realized that as soon as I sat down

11:21:14   19  that I forgot to raise it.  So, your Honor, the

11:21:17   20  distinction between the patent challenges we filed and

11:21:21   21  the patent challenges they filed, their patent

11:21:23   22  challenges they make express, as well as their other

11:21:27   23  claims, arise out of the agreement.  Our patent

11:21:30   24  challenges did not.  Let me explain why.  The patent we

11:21:33   25  challenged existed before the collaboration began.  We

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:21:36   2   filed what is called a post-grant review that anyone can

11:21:39   3   file.  It's not limited to Syngenta, any herbicide

11:21:43   4   company, any person can file a post-grant review.  There

11:21:46   5   is nothing unique to the Collaboration Agreement that

11:21:48   6   allowed us to file those patent challenges.  And the

11:21:53   7   procedural posture of that case is basically U.S PTO you

11:21:57   8   issued a patent when you shouldn't have.  Right?  So

11:22:00   9   it's not related to work that the parties completed

11:22:03   10  together during the collaboration when we were arguing

11:22:06   11  that we were the inventor or you were the inventor, that

11:22:10   12  is their claim.  Our patent challenge that we filed

11:22:13   13  related to a patent that was issued before the

11:22:16   14  collaboration began, related to work that did not occur

11:22:20   15  during the Collaboration Agreement.  And involved

11:22:23   16  nothing to do with Syngenta.  It was not a working

11:22:26   17  relationship that created that patent.  It was a patent

11:22:30   18  over a different herbicide, over a different class of

11:22:33   19  claims, right?

11:22:34   20          THE COURT:  You couldn't have gone to

11:22:35   21  arbitration if you wanted to.

11:22:38   22          MR. MOORMAN:  Yeah, we agree that the

11:22:39   23  arbitration clause wouldn't have allowed us to go to

11:22:42   24  arbitration, sure, your Honor, that is absolutely

11:22:42   25  correct, because it didn't arise out of the agreement,

1          FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:22:44  2    there would have been no basis.  But I think that brings

11:22:48  3    up a very good point.  FMC used the analogy of traffic

11:22:53  4    cop, I think your Honor may have said it too.  The

11:22:54  5    remedy, if they thought we brought it in the wrong

11:22:58  6    forum, was to move arbitration, like we did here.  We

11:23:02  7    think our positions are completely consistent.  We think

11:23:05  8    our patent challenges were brought in the right forum.

11:23:10  9    We think this one is brought in the wrong forum.  And we

11:23:10  10   asserted by moving to dismiss and stay the proceedings,

11:23:14  11   that this should be in arbitration.  If they thought we

11:23:15  12   were taking in an inconsistent position, they can't sit

11:23:20  13   back on a patent challenge they thought should be

11:23:20  14   arbitrated, the correct remedy was to move to compel

11:23:22  15   arbitration or file an arbitration like we did.

11:23:25  16             THE COURT:  Okay.

11:23:29  17             MR. MOORMAN:  I think that is all I have,

11:23:30  18   your Honor, unless your Honor has any questions.

11:23:32  19             THE COURT:  No, we've exhausted the

11:23:33  20   possibilities.

11:23:34  21             MR. MOORMAN:  Sorry, sorry.  I did have one

11:23:38  22   more comment.  The one thing FMC has been saying over

11:23:43  23   and over again is that 9.7 doesn't reference patent

11:23:48  24   challenges.  It doesn't say patent challenges.  There is

11:23:51  25   a very obvious answer to why it doesn't.  It says any

1

11:23:54    2    controversy or claim arising out of the parties'

11:23:57    3    agreement.  It encompasses everything.  It doesn't need

11:24:00    4    to specifically call out patent challenges to cover

11:24:05    5    patent challenges.  He also flips the burden.  He argues

11:24:08    6    that 4.3 doesn't cross reference 9.7.  4.3 is expired,

11:24:16    7    to the extent it is going to have a lasting impact on

11:24:16    8    9.7, it better state what the lasting impact was.  And

11:24:19    9    the sort of positive assurance you would expect to see

11:24:22   10    if 4.3 was supposed to have the impact that FMC argues,

11:24:28   11    you would see something like you see in contracts all

11:24:30   12    the time, say something like notwithstanding anything to

11:24:32   13    the contrary in section 9.7, patent challenges shall not

11:24:36   14    be arbitrable.  Some sort of positive definitive

11:24:37   15    language.  That is the sort of cross reference you would

11:24:40   16    see in 4.3 if it was intended to have the effect that

11:24:45   17    FMC advocates for.  You see nothing like that.  You see,

11:24:47   18    at most, shed a little light, give a little hint, that

11:24:51   19    is not the plausible assurance that the Second Circuit

11:24:54   20    requires.

11:24:55   21              THE COURT:  All right.  Of course --

11:24:59   22              MR. BUTSWINKAS:  I'm sorry, I always hate

11:25:05   23    this.

11:25:05   24              THE COURT:  That's all right.  It's kind of

11:25:07   25    fun.

                   FMC. CORP V. SYNGENTA CORP PROTECTION AG

11:25:07    2          MR. BUTSWINKAS:  I want to correct one

11:25:09    3  factual error.  When he says the patent challenges,

11:25:13    4  which he concedes are patent challenges, are not under

11:25:17    5  the agreement that is dead wrong.  They are clearly

11:25:21    6  Canadian challenges to candidate herbicide lead area

11:25:24    7  patents and they relate to the SGF45 lead area patents,

11:25:30    8  which is a part of this group of patents.  And for him

11:25:33    9  to say, and by the way, it took him an opening brief, a

11:25:37   10  reply brief and three arguments for him to come up with,

11:25:41   11  that is dead wrong.  And that is all I have to say.

11:25:43   12          THE COURT:  Thank you.  I'll get to work on

11:25:45   13  all of this.  And thank you, again, for all of the hard

11:25:49   14  work.  It's been a pleasure.

11:25:52   15          MR. MOORMAN:  Thank you, your Honor.

           16                   *     *     *

           17               CERTIFICATE OF REPORTER

           18

           19    I certify that the foregoing is a correct transcript

           20  of the record to the best of my ability of proceedings

           21  transcribed from the audio in the above-entitled matter.

           22

           23  S/ Karen J. Clark,  RPR

           24  Official Court Reporter

           25